## BOWLES, Adm'r, OPA, v. PANTZER LUMBER CO.

### No. 2226.

District Court, E. D. Wisconsin.

Jan. 16, 1946.

Judgment Affirmed June 13, 1947.

John J. Burke, of Milwaukee, Wis., for plaintiff.

Ralph J. Drought, of Milwaukee, Wis., and William Rabinovitz, of Sheboygan, Wis., for defendant.

DUFFY, District Judge.

In this action the administrator seeks an injunction and treble damages claiming that the defendant violated Second Revised Maximum Price Regulation 215 (8 F. R. 14145) and Revised Maximum Price Regulation 290 (9 F. R. 5257). The actual question to be decided is whether the material sold by defendant to a toy manufacturer was lumber within the meaning of said regulation.

Defendant operates a retail lumber yard at Sheboygan, Wisconsin. A mill with various machinery such as saws, shapers, and molding machines was operated in connection with or as a part of the yard. During the war period defendant had a subcontract to manufacture tent poles. For this purpose it purchased, from a lumber mill in the West, Sitka spruce lumber which was delivered in various lengths and sizes. The tent poles were also of several lengths. Some had squared edges and some were beveled. In manufacturing the tent poles the lumber was put through machines in such a way as to utilize as much of the lumber as possible. The residue was of various sizes and shapes and in normal times would have been sold as scrap. However, defendant advertised this material for sale in trade magazines and later sold same to a toy manufacturer in Chicago. Some of it was sold on a lineal foot basis and some on a board foot basis. The selling price of items sold on a lineal foot basis varied from $30.00 to $110.00 per 1000 lineal feet; those sold on a board foot basis for the most part were sold at $100.00 per 1000 board feet.

In the making of the tent poles the residue also went through the saw and molding machine and was surfaced on two or more sides. At this point the material is known as "mill trim" or "edgings." The mill trim was further processed by the cutting out of knots, the uneven ends and edges were cut off, and the pieces were then put through shapers and cut to specified dimensions and lengths. Defendant calls the material at this stage "dimension stock."

Maximum Price Regulation 290 fixes prices at the mill in dollars and cents for most of the standard items of Sitka spruce.

For those items not priced specifically the regulation provides that the Office of Price Administration must set the price upon application. In event of failure to apply for a maximum price, the regulation provides: "The maximum price for the item sold shall be $15.00 per 1000 board feet, which maximum price shall include all additions for grade, size, condition, special workings, specifications or other extras." Sec. 3(b) of MPR 215 provides: "Products covered. This regulation covers sales out of distribution yards stock of any lumber or lumber products for which direct mill maximum prices are fixed in the following maximum price regulations: * * * Maximum Price Regulation 290."

The price regulations contain no specific definition of what constitutes "lumber" as used therein. Maximum Price Regulation 290 and other lumber regulations provide that any lumber not specifically identified according to dimensions must be priced by application to the Office of Price Administration. The material sold by the defendant is not specifically mentioned in the regulation. Also, defendant did not make an application to the Office of Price Administration as required. It is evident that it would be quite impossible to draft a lumber regulation which would provide a fixed price for every conceivable length and width. To limit the application of the regulation only to those lengths and widths specifically mentioned would invite evasion for then a lumber dealer could cut off a foot or an inch from the length or change the width of lumber described in the price regulations and thereby avoid abiding by any price controls.

The material sold by defendant was used by a manufacturer in making toys. The name which the defendant gave its product is immaterial. The end use of the product, however, is significant. The fact is that the items sold by defendant were not complete in themselves, and it is my conclusion they were lumber to be used in the manufacture of toys.

The Office of Price Administration issued an official interpretation on May 12, 1944, as follows: "Mill trims. Short lengths not specifically priced sold on the

basis of grade or other specification for use in the manufacturing of toys, small boxes, novelties, etc. are lumber and are subject to the special pricing provision under the applicable mill regulation." We are admonished by the Supreme Court to give much weight to such official interpretations. Bowles v. Seminole Rock and Sand Co., 325 U.S. 410, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700. The court there said: "Since this involves an interpretation of an administrative regulation a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt. * * * But the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation. * * *" As the administrative interpretation is not plainly erroneous nor is it inconsistent with the regulation, it must be given controlling weight, and the conclusion follows that the product sold by defendant here in question was lumber.

Plaintiff is entitled to a judgment for one and one-half times the amount of the overcharge, figured on the basis that the maximum price was $15.00 per 1000 board feet.