R. C. BUCH, Plaintiff-Appellee,

v.

Rogers C. B. MORTON,* as Secretary of the Interior, Defendant-Appellant.

No. 24608.

United States Court of Appeals, Ninth Circuit.

Aug. 31, 1971.

Rehearing Denied Sept. 29, 1971.

* Substituted for Walter J. Hickel, by order dated March 1, 1971.

Robert Lynch (argued), George R. Hyde, Dept. of Justice, Shiro Kashiwa, Asst. Atty. Gen., Washington, D. C., Robert L. Meyer, U. S. Atty., Ernestine Tolin, Asst. U. S. Atty., Los Angeles, Cal., for defendant-appellant.

John Lonergan (argued), of Lonergan, Jordan & Gresham, San Bernardino, Cal., for plaintiff-appellee.

Before TUTTLE,** BROWNING, and HUFSTEDLER, Circuit Judges.

BROWNING, Circuit Judge:

Appellee's mining claim to a parcel of public domain land in San Bernardino County, California, was held invalid by the Secretary of Interior on the ground that when the claim was filed the land had been classified for disposition under the Recreation and Public Purposes Act of 1954, 43 U.S.C. §§ 869 to 869–4 (1964),[1] and, in consequence, was not

---

** Honorable Elbert P. Tuttle, Senior Judge, United States Court of Appeals, for the Fifth Circuit, sitting by designation.

1. The relevant section of the Act provides (43 U.S.C. § 869(a)):

"The Secretary of the Interior upon application filed by a duly qualified applicant under section 869–1 of this title may, in the manner prescribed by sections 869 to 869–4 of this title, dispose of any public lands to a State, Territory, county, municipality, or other State, Territorial, or Federal instrumentality or political subdivision for any public purposes, or to a nonprofit corporation or nonprofit association for

open to entry or location under the mining laws. R. C. Buch, 75 I.D. 140 (1968).

Appellee filed suit in the district court to review and set aside the Secretary's decision. The district court granted summary judgment in his favor. Buch v. Hickel, 298 F.Supp. 381 (C.D.Cal. 1969). The Secretary appeals. We reverse.

The facts are detailed in the reported decisions of the Secretary and the district court. The following summary will suffice for review.

On August 12, 1964, the land office manager of the Riverside District Land Office of the Bureau of Land Management filed a statement in the case file that described the land in question and stated that it was "classified as proper for lease and/or sale under the provisions of the Recreation and Public Purposes Act, for recreational purposes." The statement was filed without public or other notice. It made no mention of segregation or withdrawal from entry. The action was noted on a supplemental plat filed with the appropriate plat survey but was not recorded on the tract books. No other action was taken at any time by any other officer of the Interior Department to classify, withdraw, reserve, or segregate the land.

On November 2, 1965, appellee filed notice of the location of his claim, subsequently amending the notice on November 3, 1966, and March 7, 1967. On April 12, 1966, the District Land Office declared appellee's claim void *ab initio* because the parcel had been "segregated" and thereby "withdrawn" from mineral entry when classified for recreational purposes in 1964. The Bureau of Land Management and the Secretary of Interior upheld that determination.

Appellee then filed the present action. Appellee's principal contentions are: (1) that the Secretary's authority to classify the lands arose from section 7 of the Taylor Grazing Act, 43 U.S.C. § 315f,[2] and was subject to the first proviso in that section, namely, "That locations and entries under the mining laws * * * may be made upon such with-

any recreational or any public purpose consistent with its articles of incorporation or other creating authority. Before the land may be disposed of under sections 869 to 869–4 of this title it must be shown to the satisfaction of the Secretary that the land is to be used for an established or definitely proposed project. The Secretary may classify public lands in Alaska for disposition under sections 869 to 869–4 of this title. Lands so classified may not be appropriated under any other public land law unless the Secretary revises such classification or authorizes the disposition of an interest in the lands under other applicable law. If, within eighteen months following such classification, no application has been filed for the purpose for which the lands have been so classified, then the Secretary shall restore such lands to appropriation under the applicable public land laws."

2. The relevant statutory provision provides (43 U.S.C. § 315f):

"The Secretary of the Interior is hereby authorized, in his discretion, to examine and classify any lands withdrawn or reserved by Executive order of November 26, 1934 (numbered 6910), and amendments thereto, and Executive order of February 5, 1935 (numbered 6964), or within a grazing district, which are more valuable or suitable for the production of agricultural crops than for the production of native grasses and forage plants, or more valuable or suitable for any other use than for the use provided for under this Act, or proper for acquisition in satisfaction of any outstanding lien, exchange or scrip rights or land grant, and to open such lands to entry, selection, or location for disposal in accordance with such classification under applicable public-land laws, except that homestead entries shall not be allowed for tracts exceeding three hundred and twenty acres in area. Such lands shall not be subject to disposition, settlement, or occupation until after the same have been classified and opened to entry: Provided, That locations and entries under the mining laws * * * may be made upon such withdrawn and reserved areas without regard to classification and without restrictions or limitation by any provision of this Act. * * * "

drawn and reserved areas without regard to classification"; (2) that the Secretary was bound to follow the procedures established by the regulations for classifying public land under section 7 of the Taylor Grazing Act (*see* 43 C.F. R. subpart 2411), and that he failed to do so; (3) that the Secretary's classification authority had not been delegated to the land office manager; and (4) that in view of the last sentence of 43 U.S.C. § 869(a), the classification should be deemed to have terminated eighteen months after it was made, in the admitted absence of an application for purchase or lease of the parcel. The district court granted summary judgment on all four grounds.

I

We consider first whether, assuming a proper classification of these lands for disposition under the Recreation and Public Purposes Act had been made, they nonetheless remained open to location and entry under the mining laws in accordance with the proviso of section 7 of the Taylor Grazing Act.[3]

The Recreation and Public Purposes Act of 1954 originated in the Recreation Act of 1926, reproduced in the margin.[4]

The predecessor statute applied only to public domain lands in the states, and did not apply to such lands in Alaska, then a territory. One of the purposes of

3. The Classification and Multiple Use Act of September 19, 1964, 78 Stat. 986, 43 U.S.C. §§ 1411–1418, confers broad classification authority upon the Secretary, and provides that publication in the Federal Register of a proposed classification under the Act "shall have the effect of segregating such land from settlement, location, sale, selection, entry, lease, or other formal disposal under the public land laws, including the mining and mineral leasing laws."

This Act became effective after the classification decision at issue here. Moreover, that decision was not published in the Federal Register.

4. The Act of June 14, 1926, Ch. 578, 44 Stat. 741, reads:

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Secretary of the Interior be, and hereby is, authorized, in his discretion, to withhold from all forms of appropriation unreserved non-mineral public lands, which have been classified by him as chiefly valuable for recreational purposes and are not desired for Federal administration, but only after a petition requesting such withdrawal has been signed and filed by the duly constituted authorities of the States or of the county or counties within which the lands are located, and to accept title on behalf of the United States from any States in and to lands granted by Congress to such State, and in exchange therefor to patent to such State an equal quantity or value of surveyed land so withheld and classified, any patent so issued to con-

tain a reservation to the United States of all mineral deposits in the land conveyed and of the right to mine and remove same, under regulations to be established by the Secretary, and a provision for reversion of title to the United States upon a finding by the Secretary of the Interior that for a period of five consecutive years such land has not been used by the State for park or recreational purposes, or that such land or any part thereof is being devoted to other use: *Provided,* That lands so withheld and classified may, in the discretion of the Secretary of the Interior, be also held subject to purchase and may be purchased by the State or county in which the lands are situated, or by an adjacent municipality in the same State, at a price to be fixed by the Secretary of the Interior, through appraisal or otherwise, subject to the same reservation of mineral deposits and the same provision for reversion of title as are prescribed for conveyances to the States in consummation of exchanges hereby authorized, or be held subject to lease and may be leased to such States, counties, or municipalities for recreational use at a reasonable annual rental for a period of twenty years, with privilege of renewal for a like period. And the Secretary of the Interior is hereby authorized to make all necessary rules and regulations for the purpose of carrying the provisions of this Act into effect: *Provided further,* That the Secretary of the Interior shall for each year make a report to Congress giving in detail a list of lands exchanged under the provisions of this Act."

the 1954 amendments was to include the latter lands within the Act.

Prior to 1954 the Secretary of Interior had authority under section 7 of the Taylor Grazing Act to classify lands in the states for disposition under the Recreation Act. The Taylor Grazing Act, however, like the Recreation Act prior to 1954, applied only to lands in the states. It was therefore necessary to grant the Secretary authority to classify the newly included Alaskan lands for disposition under the Act. This was accomplished by the following sentence in section 869 (a): [5]

"The Secretary may classify public lands in Alaska for disposition under sections 869 to 869–4 of this title."

The next two sentences of section 869(a) read as follows:

"Lands so classified may not be appropriated under any other public land law unless the Secretary revises such classification or authorizes the disposition of an interest in the lands under other applicable law. If, within eighteen months following such classification, no application has been filed for the purpose for which the lands have been so classified, then the Secretary shall restore such lands to appropriation under the applicable public land laws."

It is clear from the first of these two sentences that Alaskan lands classified by the Secretary for disposition under the Recreation and Public Purposes Act of 1954 are not subject to location or entry under the mining laws. The question is whether this sentence also applies to public lands in the states, as the government contends; or whether, as appellee argues, such lands are subject to the proviso of section 7 of the Taylor Graz-ing Act and therefore remain open to entry under the mining laws.

There are substantial arguments for both positions.

A natural reading of the pertinent statutory language supports appellee's construction. The three sentences of the 1954 Act would ordinarily be read as conditioning one another, thus limiting the second and third sentences to Alaska by implication, as the first is limited expressly. And since, as both parties agree, section 7 of the Taylor Grazing Act is the source of the Secretary's authority to classify lands in states other than Alaska for disposition under the Act of 1954, it would seem only reasonable that this authority be limited in accordance with the clear and unequivocal language of section 7. Moreover, language in a letter from the Assistant Secretary of Interior attached to the Senate report strongly suggests that the third sentence, like the first, is applicable only to Alaskan lands.[6]

We conclude, nonetheless, that the second sentence, barring lands classified for disposition under the 1954 Act from appropriation under any other public land law, is applicable to all lands so classified, not only in Alaska but in the other states as well.

The sentence in question is phrased in general terms, not limited to Alaska. Each reference to this provision in the House and Senate reports is similarly unqualified.[7] More important, this interpretation will accomplish what Congress apparently intended.

Prior to the 1954 amendments the Secretary was expressly authorized "to withhold from all forms of appropriation" lands classified under the Act as chiefly valuable for recreational pur-

---

5. *See* H.R.Rep.No.353, 83d Cong., 1st Sess. 4 (1953), S.Rep.No.1146, 83d Cong., 2d Sess. 4 (1954), 2 U.S.Code Cong. & Admin.News, 83d Cong., 2d Sess., p. 2316 (1954).

6. S.Rep.No.1146 at 4: "The bill provides that if public lands in Alaska are classified for disposition under this act, and no application is filed within 18 months after such application, the Secretary must restore such lands to appropriation under the public land laws." U.S.Code Cong. & Admin.News 1954, p. 2319.

7. H.Rep.No.353 at 2: S.Rep.No.1146, at 2, 4.

poses. *See* note 4. Thus, prior to the 1954 Act the proviso of section 7 of the Taylor Grazing Act did not apply to lands in the states that were classified for disposition under the Recreation Act, even though the classification was accomplished through the exercise of section 7 authority. Appellee's interpretation assumes that Congress intended by the 1954 amendments to change the law in this respect. This would mean that lands in states other than Alaska would be subject to entry under the mining laws after classification for disposition under the 1954 Recreation and Public Purposes Act, though they would not have been under the prior Act.

Nothing in the legislative history suggests that such a change was intended. On the contrary, Congress intended to reduce the impact of the mining laws upon lands classified for disposition for recreation and other public purposes. This is admittedly true when such lands are located in Alaska, and no reason has been suggested why Congress would wish to differentiate in this respect between lands located in that state and in other states.

The reason for barring appropriation under the mining laws of lands classified for recreational or other public use was to "prevent the defeat of the proposed disposition of a particular tract under the Recreation Act by locations, entries, or the acquisition of other interests after such classification." S.Rep. No. 1146, 83d Cong., 2d Sess. 4 (1954), U.S.Code Cong. & Admin.News 1954, p. 2319. This reason applies equally wherever the lands are located.

Another change introduced by the 1954 amendments is relevant here. Prior to 1954 the Act applied only to "nonmineral" public lands. The amend-

ments eliminated this limitation. It was stated that the limitation "is not necessary since the classification power will be adequate to insure that needed mineral lands will not be released by the Department," and the amended Act "provides for reservation by the United States of all mineral rights" in conveyances under the Act. H. Rep.No. 353 at 2, S.Rep.No. 1146 at 2, U.S. Code Cong. & Admin.News 1954, p. 2317. This amendment indicates that Congress was not concerned with affording greater protection to mineral claimants, as appellee's interpretation of the language would necessarily imply. It also indicates that Congress intended to rely upon the Secretary's discretion exercised in the classification process to assure continued availability of lands containing needed minerals, rather than upon the flat rule of the Taylor Grazing Act proviso that the mining laws remained applicable despite classification.

Finally, the Secretary of Interior adopted this construction of the 1954 Act contemporaneous with its enactment. The Secretary issued revised regulations under the Act little more than six months after its passage. 43 C.F.R. §§ 254.1–254.15, 19 Fed.Reg. 9120, December 23, 1954. Section 254.6(a) of these regulations provided that under the amended Act lands in states other than Alaska classified pursuant to section 7 of the Taylor Grazing Act, as well as Alaskan lands, "will be segregated from all appropriations, including locations under the mining laws, except as provided in the order of classification or in any modification or revision thereof." This regulation has remained unchanged during the ensuing seventeen years. *See* 43 C.F.R. § 2741.2(d) (1971). It is entitled to great weight.[8]

---

8. As Mr. Justice Cardozo said in Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933):

"[A]dministrative practice, consistent and generally unchallenged, will not be overturned except for very cogent reasons if the scope of the command is

indefinite and doubtful. * * * The practice has peculiar weight when it involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new."

Accordingly, we hold that the land in question was not subject to appropriation under the mining laws after classification for disposition under the Recreation and Public Purposes Act of 1954, if the classification process was not procedurally defective and was not automatically vacated by the elapse of eighteen months.

## II

■ Both parties agree that the Department's regulations regarding general land classification procedures, 43 C. F.R. subpart 2411,[9] are applicable at least in part to classification of land for disposition under the Recreation and Public Purposes Act. The regulations state as much. *See* section 2411.1–1(a), incorporating by reference section 2410.-0–3(a) (2). The Department did not follow the detailed procedural steps set out in these regulations in classifying the land involved here.

The regulations recognize that the Secretary may classify lands either upon the filing of a petition-application or without such a petition-application having been filed. 43 C.F.R. § 2410.0–4(b). The government argues that the detailed procedures set out in the regulations are applicable only when a petition-application has been filed, and not when, as here, the authorized officer classifies the lands on his own initiative. The language of the regulations is consistent with this interpretation;[10] and government counsel represents that it reflects the Department's practice.

The Department's interpretation of its own regulations is at least persuasive of their meaning. Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). The Secretary could reasonably conclude that the existence of a specific special interest in the classification of the land evidenced

by the filing of a petition-application justified a more formal procedure than would be appropriate in routine intra-office determinations designed only to preserve the available status of the land for a temporary period.

We might think it preferable that the regulations apply equally to all classification decisions as a safeguard against unreasonable or unwarranted withdrawal of public lands from competing uses. In the absence of a statutory or constitutional command, however, the choice rested with the Secretary.

Accordingly, we hold that the procedural regulations in question applied only when the classification action was initiated by a petition-application.

## III

■ Appellees' third contention is that the Secretary's authority to classify the land had not been delegated to the land office manager.

Section 1.5(a) of Bureau of Land Management Order No. 684, 26 Fed.Reg. 8217 (1961), delegates the Secretary's authority to classify lands to state directors. Section 1.1(a) of the same order gives state directors authority to redelegate. The California State Director redelegated his authority to classify lands to all district managers in California. 27 Fed.Reg. 3297 (1962). Since the Riverside office was both a district office and a land office, its manager was empowered to classify land under these orders.

However, Part VIII of Bureau of Land Management Order No. 701, 29 Fed.Reg. 10526 (1964), revoked Order No. 684, except that "Redelegation of authority pursuant to Order No. 684, not inconsistent with the delegations herein made, shall continue in force until revoked or superseded." This was

---

9. This and all subsequent references are to the regulations as they read and were numbered in April 1964.

10. Appellee points to the provision of section 2411.1–3(b) that "where no petition-application has been filed *for the purpose*

*for which the land is proposed to be classified,* the proposed [classification] decision shall so state" (emphasis added). As the italicized language indicates, however, this passage does not refer to a situation in which no petition-application at all has been filed.

the order in effect at the time of the classification in question.

Appellee points to section 2.5 of Order No. 701, which states in relevant part:

"Sec. 2.5 *Classifications and withdrawals.* Subject to receipt of a report from the State Director, the land office manager may take all the listed actions on:

(b) Withdrawals and reservations.

(c) Restoration orders."

Appellee interprets the absence of any mention of classification as meaning that the authority of local land officers to classify land was withdrawn.

It seems apparent that a subsection (a) was inadvertently omitted in the publication of Order No. 701. Even if the omission were deliberate, it would not justify appellee's conclusion.

Section 2.5 applies to a "land office manager." As we have seen, the manager of the Riverside office received his land classification authority in his capacity as a district manager by delegation through the State Director. Nothing in Order No. 701 is inconsistent with the continued viability of this chain of authority. Appellee argues that under Order No. 701 the State Director had authority to classify land (section 1.5(a)), but not to withdraw or reserve it (section 1.5(b)). But under the Recreation and Public Purposes Act of 1954, withdrawal is an automatic consequence of classification.

### IV

██ We have concluded that appellee's first notice of location was void, because the parcel had been classified and withdrawn from entry. Nevertheless, appellee argues that language in the Act of 1954 allows him to claim rights in the parcel on the basis of his amended notices.

The relevant language of section 869(a) reads:

"If, within eighteen months following such classification, no application has been filed for the purpose for which the lands have been so classified, then the Secretary shall restore such lands to appropriation under the applicable public land laws."

Appellee contends that even if classification segregated the parcel, under this provision of the statute the classification automatically terminated after eighteen months, and his amended notices filed more than eighteen months after classification were therefore valid.

The government argues, and we agree, that this provision is not self-executing.

The statutory language contemplates action by the Secretary to terminate the classification.[11] Such congressional directives are, of course, commonplace. Appellee's counsel argue that what the statute requires the Secretary to do "should be regarded as having been done." They add, however, that "there is no authority known to us for this basic proposition."

It is easy to say that if Congress had intended to make the provision self-executing it could have said so, and probably would have. The argument is more persuasive in this instance than in the usual case, however, in view of the language of the Multiple Use Act of 1964, 43 U.S.C. §§ 1411–1418 (1964), adopted by the same Congress little more than a month earlier. In a similar context, section 4 of that statute, 43 U.S.C. § 1414, declares in unambiguous terms that if land is not offered for sale or other disposal under the Act, "the segregative effect shall cease at the expiration of two years from the date of publication."

Accordingly, we conclude that the eighteen-month provision is not self-executing, and since "the classification was never revoked and has been considered as continuing and effective," R. C. Buch, *supra*, 75 I.D. at 146, the lands were not open to entry and appropriation.

Reversed.

---

11. So too does the language of the applicable regulation. 43 C.F.R. § 2232.1–4(b).