995 F.2d 233
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
TANACROSS, INC., Plaintiff-Appellant,
v.
Bruce BABBITT,* in his capacity as Secretary
of the Interior Department of the United States, the United
States of America, General Services Administration, the
Bureau of Land Management, and Edward Spang,
** in his capacity as Alaska State Director
of the Bureau of Land Management, Defendants-Appellees.
 No. 88-3750.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 3, 1993.
Decided June 3, 1993.
 
 Before WRIGHT, ALARCON and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Tanacross, Inc., a native village, challenges the district court's entry of summary judgment for the United States, the General Services Administration ("GSA"), the Bureau of Land Management ("BLM"), the Secretary of the Interior ("Secretary") in his official capacity, and the Alaska State Director of the BLM in his official capacity. Tanacross claims the district court erred in holding Tok Terminal in Alaska was not available for native selection under the Alaska Native Claims Settlement Act ("ANCSA"), 43 U.S.C. § 1601 et seq., because the land was "withdrawn ... for national defense purposes." Tanacross also claims the Secretary was required to revoke the withdrawal of Tok Terminal by the final selection date. Tanacross further asserts there were material issues of fact which were not resolved. We affirm.
 
 
 3
 Tanacross' selection of Tok Terminal under ANCSA was denied by BLM because the land was withdrawn for national defense purposes. According to the provisions of 43 U.S.C. § 1610(a)(1), "lands withdrawn or reserved for national defense purposes" were explicitly excepted from native selection. Tok Terminal was withdrawn for use by the Army under Public Land Order 1887 (1959).
 
 
 4
 We review an order granting summary judgment de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990). Taken in the light most favorable to Tanacross, we must determine whether "there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 5
 "[A]n administrative agency's interpretation of a statute it is charged with administering is accorded substantial deference." Seldovia Native Ass'n, Inc. v. Lujan, 904 F.2d 1335, 1342 (9th Cir.1990). The agency's interpretation is upheld if it is "reasonable and is not contrary to congressional intent." Id.
 
 
 6
 * Tanacross concedes that a withdrawal remains in effect until it is formally revoked, United States v. Consolidated Mines & Smelting Co., Ltd., 455 F.2d 432, 445-46 (9th Cir.1971); Buch v. Morton, 449 F.2d 600, 607 (9th Cir.1971), and that the withdrawal for the Department of the Army was never formally revoked. Tanacross distinguishes these cases by suggesting that the terminal had been "transferred to the GSA for disposal," so "the withdrawal was not held by any military service and the national defense purposes exception no longer applied." In whatever sense the land was transferred to GSA, the Army continued to hold the property despite filing the notice of intent to relinquish it. This fact is critical. Sitnasuak Native Corp., 91 I.B.L.A. 86, 91 (1986). Under both BLM and GSA regulations, the Army still held the property. 43 CFR 2374.1(c); 41 CFR 101-47.201-3(b); 41 CFR 101-47.103-7. Though GSA had authority to sell or otherwise dispose of the property, the property was not held by GSA nor was the withdrawal revoked. See Alaska Pipeline, 38 I.B.L.A. 1, 17 (1978).
 
 
 7
 Tanacross' argument, in essence, is that while courts may be hesitant to scrutinize the actual use of a property, the Army's authorization for GSA to dispose of the property is an objective indication of the terminal's use which we should be willing to recognize. The clear emphasis in Consolidated Mines and Buch, however, is that nothing short of a formal withdrawal would change the land's status, even if any change in purpose was objectively verifiable. Any other result would lead to "confusion ... in the field of property law, a field in which certainty has undisputed advantages." Consolidated Mines, 455 F.2d at 446. The sole fact that the land was still withdrawn by the Army is controlling, even if the Army took steps indicating it might soon get rid of the property or had no further need of it. See David W. Harper, 74 I.D. 141, 149 (1967); Tenneco Oil Co., 8 I.B.L.A. 282, 283-84 (1972).
 
 
 8
 It was not unreasonable for BLM to conclude that the land was "withdrawn ... for national defense purposes" until the withdrawal was formally revoked.
 
 II
 
 9
 Tanacross maintains BLM failed to take required steps to revoke the withdrawal so that the terminal would be available for selection. According to Tanacross, BLM should not have considered whether the land was improved because improvements on land available for selection under ANCSA are not a factor.
 
 
 10
 Tok Terminal was never available for selection under ANCSA since it was explicitly excepted from withdrawal under 43 U.S.C. § 1610(a)(1). ANCSA does not apply, so BLM must follow the provisions of the Federal Property and Administrative Services Act, 40 U.S.C. § 471 et seq., which requires BLM to assess whether the property is "not suitable for return to the public domain for disposition under the general public-land laws because such lands are substantially changed in character by improvements or otherwise." 40 U.S.C. 472(d).
 
 III
 
 11
 Tanacross also argues the withdrawal should have been revoked under the terms of a 1974 Department of Interior-GSA agreement. Section II of the agreement, which Tanacross raised in the Alaska Native Claims Appeal Board (ANCAB) proceeding, applies only to surplus real property. Because Tok Terminal was never declared surplus, Section II is not applicable here.
 
 
 12
 Tanacross now argues BLM did not follow Section III of the agreement because BLM did not make Tok Terminal available for native selection even though there was no federal program need. Tanacross waived this argument by not presenting it before ANCAB. Getty Oil v. Andrus, 607 F.2d 253, 256 (1979). The administrative record also indicates both BLM and the Coast Guard did need the property. A.R.Vol. 1 at 84. Tanacross does not deny these needs existed.
 
 IV
 
 13
 Tanacross asserts summary judgment was improper because there were disputed material facts. Tanacross proposes that BLM's intentions to make use of the land biased the agency, improperly influencing its decisionmaking. Tanacross does not suggest BLM's determination that the terminal was substantially changed in character by improvements was erroneous. Once BLM determined the land was improved, it was proper for BLM, like any other agency, to indicate that it needed the property. Besides, the record indicates it was GSA, not BLM, that initially decided the land would be retained by the government.
 
 
 14
 Tanacross states the terminal's use for defense purposes (past the final selection date) is still in dispute. The terminal's actual use, as noted above, is not material to the issue whether the land was still withdrawn for national defense purposes at the time of selection.
 
 
 15
 Tanacross also asserts that BLM expedited other land dispositions so the land would be available for native selection by the final selection date. Tanacross argues that the failure to expedite the processing of Tok Terminal violates the Equal Protection and Due Process Clauses. Tanacross cannot claim that BLM was dilatory in making Tok Terminal available for native selection because the terminal was simply not available for native selection at any time.
 
 
 16
 The district court's entry of summary judgment is AFFIRMED.
 
 
 
 *
 Bruce Babbitt is substituted for Donald P. Hodel as Secretary of the Interior, pursuant to Fed.R.App.P. 43(c)(1)
 
 
 **
 Edward Spang is substituted for Michael J. Penfold as Alaska State Director of the Bureau of Land Management pursuant to Fed.R.App.P. 43(c)(1)
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3