473 F.2d 104
 153 U.S.App.D.C. 393
 SERVICE ELECTRIC CABLE TV, INC. tr as Teleservice Company of
Wyoming Valley, Wilkes-Barre, Pennsylvania, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION
Taft Broadcasting Company et al., Intervenors.
 No. 71-1936.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 8, 1972.
Decided Nov. 9, 1972.
 
 Mr. Frederick W. Ford, with whom Mr. Lee G. Lovett, Washington, D. C., was on the brief for appellant.
 Mr. R. Michael Senkowski, Counsel, F. C. C. with whom Messrs. John W. Pettit, Gen. Counsel, and Joseph A. Marino, Associate Gen. Counsel, F. C. C., were on the brief for appellee.
 Mr. Arthur B. Goodkind, Washington, D. C., was on the brief for intervenor, Taft Broadcasting Co.
 Mr. Daniel W. Toohey, Washington, D. C., was on the brief for intervenor, Scranton Broadcasters, Inc.
 Mr. Marvin J. Diamond, Washington, D. C., was on the brief for intervenor, WBRE-TV, Inc.
 Before BAZELON, Chief Judge, and TAMM and WILKEY, Circuit Judges.
 WILKEY, Circuit Judge:
 
 
 1
 Appellant, a cable TV operator, allegedly violated certain rules promulgated by the Federal Communications Commission to control the expansion of cable TV operations.[1] Prior to 1966 appellant provided cable service to Wilkes-Barre, Pennsylvania, and its suburb Hanover Township.[2] In early 1966 the FCC's rules were changed so that cable service of the kind involved here could not be expanded into "obviously new geographical areas" without notice to local TV stations and a hearing before the Commission.[3] These notice and hearing requirements did not prohibit the expansion of service within an area that was supplied prior to the effective date of the regulations.[4]
 
 
 2
 In 1967 the language prohibiting expansion into "obviously new geographic areas" was amended so that the rules stated that expansion could not be made "into another community."[5] There is no question that any expansion of service within either Wilkes-Barre or Hanover Township after 1966 or 1967 was lawful since both of those communities were being supplied prior to the 1966 effective date of the new rules. In 1968 appellant began providing cable service to Ashley Borough-a small separately incorporated suburb of Wilkes-Barre which is totally surrounded by Hanover Township.
 
 
 
 * * *
 
 
 
 3
 * * *
 
 
 4
 The only issue here is whether Ashley Borough is "another community" as that phrase is used in the relevant FCC regulations. If Ashley Borough is determined to be a different "community" from Wilkes-Barre or Hanover Township, then appellant's expansion into the area after the effective date of the regulations is in violation of the rules and must be enjoined. If it is decided that Ashley Borough is a part of the same "community" as Wilkes-Barre or Hanover Township, then the expansion into that area was legal, since Wilkes-Barre and Hanover Township were serviced prior to the effective date of the rules.
 
 
 5
 The opposing views of the parties are easily stated. The FCC contends that the phrase "another community" is synonymous with "separately incorporated community." Since Ashley Borough is separately incorporated, expansion into the town after the effective date of the rules is clearly unlawful. The FCC argues that its rules have consistently been interpreted in this way and that FCC pronouncements on the subject should have adequately informed appellant that his expansion was in violation of the rules.
 
 
 6
 Appellant, on the other hand, contends that the language prohibiting expansion "into another community" must be read more metaphorically. The term "community" under this reading must be defined, not by arbitrary political boundaries, but rather by the particular facts presented. Thus a separately incorporated suburb, if sufficiently integrated into the contiguous urban community, would be a part of the same "community" as the surrounding area. Appellant argues that this interpretation is more consistent with the purposes and language of the FCC rules, and that until this case the FCC has issued pronouncements that would lead a reasonable person to believe that the expansion challenged here was lawful.
 
 
 7
 After consideration, the FCC decided that appellant's expansion had been "into another community" and was therefore unlawful.[6] We do not find this determination by the FCC to be "arbitrary and capricious." The FCC's holding is therefore affirmed.
 
 
 8
 As we read them, the relevant FCC decisions show the Commission consistently taking a very narrow view of the degree of expansion permissible under the rules. Within a month of their promulgation the FCC was asked to consider the lawfulness of a proposed expansion. In Telerama, Inc.[7] the Commission held that the right to extend service after the effective date of the rules was limited to a "specific community and not . . . an area generally."[8] More helpful for our analysis are the factors that the FCC deemed important in determining whether the expansion was lawful:
 
 
 9
 Turning to the facts of this case, we find that each of the communities . . . [into which service is sought to be extended] is an independent municipal or governmental subdivision of the suburban area of Cleveland. . . . [T]hese communities are clearly and specifically separately identified in the 1960 U.S. census of population as separate municipal entities and civil divisions. On the basis of the foregoing, it is reasonable to conclude that each is a separate community for the purpose of section 74.1107.[9]
 
 
 10
 In another case before the FCC the following year it was argued that an operator should be allowed to extend its operations into three suburban communities because service had commenced in other parts of the urban area prior to the effective date of the rules. The FCC responded:
 
 
 11
 [The operator] asserts that most of the metropolitan or urbanized area presently receives CATV service and that section 74.1107 was not intended to prohibit the expansion of existing service into a few small, remaining "pockets" after February 15, 1966. The argument is without merit and must be rejected. Freemansburg is an incorporated community, and Ormrod and Greenawalds are distinct and identifiable, albeit unincorporated, areas. Under such circumstances, Commission approval is required before a new CATV service carrying distant signals may be commenced in any of these communities. The size of the area in which the CATV system proposes to operate, and the extent to which "grandfathered" signals are being distributed in the surrounding areas may be pertinent in determining whether a waiver of the rules is warranted. However, the commencement of service in a new area without prior Commission approval, irrespective of the size of the area, would be inconsistent with the public interest and with the objectives of section 74.1107 of the rules. Telerama, Inc., 3 F.C.C.2d 585, adopted April 29, 1966; Mission Cable TV, Inc., et al., 4 F.C.C.2d 236, released June 22, 1966.[10]
 
 
 12
 The two decisions quoted above, as well as others,[11] reveal that the FCC has consistently held expansion into a separately incorporated community as being the same as expansion "into another community." Significantly, both of these decisions were rendered prior to appellant's expansion into Ashley Borough.[12] Appellant was aware that Ashley Borough was a separately incorporated community. The prior FCC pronouncements quoted should have at least warned appellant that his expansion might be unlawful. Nonetheless, appellant apparently proceeded with his expansion without considering the legal implications of his action.
 
 
 13
 Appellant claims that all of the previous FCC and court decisions are factually distinguishable from the instant case. From this it is argued that the FCC has somehow acted capriciously in holding that Ashley Borough is "another community" under the statute. It is true that the FCC has never previously held a community so completely surrounded and contiguous to a previously serviced community as is Ashley Borough to be "another community"; this is neither surprising nor decisive in light of the fact that the FCC has never previously been faced with a controversy in which the separately incorporated community was so totally integrated into the previously serviced community. It is, therefore, not surprising that the Commission has not made any prior pronouncements on the precise subject.
 
 
 14
 The absence of any identical precedent is of no decisive importance, because the FCC is simply extending a previously established rule to a new fact situation. This is, of course, the sort of decision that judicial bodies frequently make. Such extensions may be unreasonable under some circumstances. The standard for review in this case, however, is quite narrow, and it cannot be said that the FCC's application of its rule here is "plainly erroneous."[13]
 
 
 15
 Appellant further argues that the FCC has stated that cases of this sort must be dealt with on a case-by-case basis. This stated policy was supposedly violated here, because the FCC decided the case by the mechanical application of an arbitrary and inflexible rule without considering the peculiar nature of the situation. In making this argument appellant relies on the following language:
 
 
 16
 The difficulty of drawing lines within an incorporated community and of establishing the separate community status of adjoining unincorporated areas not separated by undeveloped land was recognized in paragraph 149 of the Second Report and in Mission Cable (4 F.C.C.2d at 240), as well as the desirability of avoiding artificial boundaries. In general . . . the drawing of appropriate lines for extension into new geographic areas in the above situations calls for case-by-case judgment . . .[14]
 
 
 17
 Unfortunately, the above language does not help appellant. The statement clearly deals with situations in which lines must be drawn within incorporated communities and between adjoining unincorporated communities.
 
 
 18
 Such is not the case here. The line is already drawn. It is easy to understand why the FCC might have to deal with the problem on a case-by-case basis when there are no clearly discernible boundaries. When the Commission is dealing with incorporated communities, however, there is no problem with determining where the lines are to be drawn. There is, consequently, no reason for the Commission to deal with such situations on a case-by-case basis.
 
 
 19
 From the above discussion it is clear that the Commission's narrow construction of the permissible extent of cable expansion is consistent with prior interpretations. Even so, the FCC's application of its rules in this case would not be permitted if it was unduly discriminatory. Appellant argues that public policy compels our approval of the extension; otherwise, the residents of Ashley Borough will receive fewer television signals than their neighbors in Wilkes-Barre and Hanover Township. The reasoning seems to be that this deprivation somehow unlawfully discriminates against the citizens of Ashley Borough. Appellant never informs the court why this "discrimination"-if indeed this deprivation is discriminatory-is unlawful and under the facts presented we are unable to conceive of any basis for holding it to be so.
 
 
 20
 We find, rather, that the interpretation approved here is consistent with both public policy and the policies behind the rules restricting cable expansion. Defining "community" as being synonymous with "separately incorporated municipality" yields a rule that is easily understood and administered. It should be remembered that the rules in question do not prohibit expansion under all circumstances; they simply require that expansion be subject to notice and hearing. The determination whether an expansion is into another "community" is a general screening device. It is therefore appropriate that the standard for determining this initial question not be one that requires an undue effort on the part of the administrative body.
 
 
 21
 Once this initial determination is made, a cable operator may either submit to the notice and hearing requirements or request a special waiver from the FCC which would allow expansion "into another community" without notice and hearing. Appellant argued in brief that these "alternatives" were time-consuming, expensive and wasteful, and thefore unrealistic from the position of this small cable-TV operator. Appellant's skepticism as to his chances of obtaining relief from the FCC has been borne out, as during oral argument we were advised that appellant had applied for a special waiver and this request had been denied. On the present state of the record, and the issues presented at this time, this may invoke our sympathy, but nothing else, as the legality of the Commission's rejection of appellant's request for a special waiver is not now before this court. The only matter at issue here is the lawfulness of the FCC's initial determination that appellant had extended service "into another community." We therefore make no holding here regarding the propriety of the Commission's rejection of appellant's request for a special waiver.
 
 
 22
 For the reasons given above the action of the Federal Communications Commission is
 
 
 23
 Affirmed.
 
 
 
 [1]
 Appellant is alleged to have violated 47 C.F.R. 74.1105 (1972) and 47 C.F.R. 74.1107 (1972)
 
 
 [2]
 There is currently a dispute concerning whether three of the fourteen signals supplied to Wilkes-Barre and Hanover Township were being transmitted prior to the change in FCC rules in 1966. The FCC decided that these three signals were not being transmitted in Hanover Township prior to the effective date of the FCC rules limiting the expansion of cable operations. See Service Electric Cable TV, Inc., 23 F.C.C.2d 468, reconsideration denied, 25 F.C.C.2d 664, reopening denied, 26 F.C.C.2d 989 (1970), review denied, 30 F.C.C.2d 831 (1971). This decision is currently on appeal in Service Electric Cable TV, Inc. v. FCC, 468 F.2d 674, now pending before the Third Circuit. This pending litigation is relevant to the number of signals that potentially may be carried into Ashley Borough. The issue presented in this case, however, is whether any signals may be transmitted to Ashley Borough. It is, therefore, not necessary for this court to await a determination by the Third Circuit of the precise nature of the signals being transmitted prior to 1966 in order to decide the issue in this case
 
 
 [3]
 The language of the rules as they were originally adopted may be found in the Second Report and Order, 2 F.C.C.2d 725 (1966)
 
 
 [4]
 These so-called "grandfather" clauses may be found in 47 C.F.R. 74.1105(d) (1972) and 47 C.F.R. 74.1107(d) (1972)
 
 
 [5]
 47 C.F.R. Secs. 74.1105 and 74.1107 were originally adopted by the Second Report and Order, 2 F.C.C.2d 725 (1966). They were revised by a Memorandum Opinion and Order, 6 F.C.C.2d 309 (1967). The relevant portions of the original and revised text of these rules are given below. The portions in brackets were in the original rules and were eliminated by the revision and the portions in italics were added
 Sec. 74.1105 Notification Prior to Commencement of New Service
 (a) No CATV system shall commence operations in a community or commence supplying to its subscribers the signal of any television broadcast station carried beyond the grade B contour of [that] the station, unless the system has given prior notice of the proposed new service to the licensee or permittee of any television broadcast station within whose predicted grade B contour the system operates or will operate. . . . Such notice shall be given by existing systems which propose to add new distant signals, . . . and by systems which propose to extend lines into [obviously new geographic areas] another community. . . .
 (d) The provisions of this section do not apply to any signals which were being supplied to subscribers in the community of the CATV system on March 17, 1966, unless it is proposed to extend lines into another community. . . . Sec. 74.1107 Requirement for Showing in Evidentiary Hearing and Commission Approval in Top 100 Television Markets; Other Procedures.
 (a) No CATV system operating in a community within the predicted grade A contour of a television broadcast station in the 100 largest television markets shall extend the signal of a television broadcast station beyond the grade B contour of that station, except upon a showing approved by the Commission that such extension would be consistent with the public interest, and specifically the establishment and healthy maintenance of television broadcast service in the area. . . .
 (d) The provisions of paragraphs (a) and (b) of this service shall not be applicable to any signals which were being supplied by a CATV system to its subscribers in a community on February 15, 1966, and pursuant to a franchise (where necessary) issued on or before that date; Provided, however, That any new franchise or amendment of an existing franchise after February 15, 1966, to operate or extend the operations of the CATV system in the same general area or any extension into another community does come within the provisions of paragraphs (a) and (b) of this section. . . .
 
 
 [6]
 Service Electric Cable TV, Inc. FCC 71-1145 (Memo No. 72-491, adopted 3 November 1971) (reprinted in Joint App. at 41)
 
 
 [7]
 3 F.C.C.2d 585 (1966), aff'd, 419 F.2d 1047 (6th Cir. 1969)
 
 
 [8]
 Id., at 586
 
 
 [9]
 Ibid
 
 
 [10]
 Twin County Trans-Video, Inc., 7 F.C.C.2d 379 (1967)
 
 
 [11]
 Pottsville Trans-Video, 26 F.C.C.2d 222, 223 (1970); Jackson TV Cable Co., 4 F.C.C.2d 979, 982 (1966); Booth American Co., 4 F.C.C.2d 509, 513 (1966)
 
 
 [12]
 The decision in Telerama, Inc., footnotes 7-9, supra, and accompanying text, was issued on 29 April 1966. The decision in Twin County Trans-Video, Inc., footnote 10, supra, and accompanying text, was issued on 15 March 1967. Appellant did not begin his operations in Ashley Borough until 19 December 1968
 
 
 [13]
 Udall v. Tallman, 380 U.S. 1, 16-17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)
 
 
 [14]
 Memorandum Opinion and Order on Reconsideration of Second Report and Order, 6 F.C.C.2d 309, 322 (1967) (emphasis added)