**Robert L. KRUSE et al., Plaintiffs,**

v.

**Robert E. HAMPTON et al., Defendants.**

**Civ. A. No. 7432–72–P.**

United States District Court, S. D. Alabama, S. D.

April 30, 1974.

William H. McDermott, Mobile, Ala., for plaintiffs.

Irwin W. Coleman, Asst. U. S. Atty., Mobile, Ala., for defendants.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PITTMAN, Chief Judge.

This suit was brought by the plaintiffs, federal "wage-board" employees at Keesler Air Force Base, Mississippi, seeking to have certain regulations promulgated by the Civil Service Commission pursuant to 5 U.S.C. § 5341(c) (now 5 U.S.C. § 5343(d)) held unlawful, and for the recovery of wages due them had the proper regulations been implemented. Jurisdiction of the court is invoked under 28 U.S.C. § 1346(a)(2). The defendants have moved for a summary judgment on the ground that there is no dispute as to any material fact and the defendant is entitled to judgment as a matter of law.

The following facts, developed by affidavits, answers to interrogatories, admissions by the parties, and by the pleading, are agreed by the parties to be uncontested.

Prior to 1968 the hourly wage of federal civilian "wage-board" employees was regulated by Subchapter IV of chapter 53 of Title 5, United States Code. This statute was implemented and administered by the Civil Service Commission through regulations promulgated and administered by that body. The applicable statutes and regulations are set out in Federal Personnel Manual, Chapter 532, and Federal Personnel Manual Supplement 532–1.

The basic policy behind the federal hourly wage structure is to maintain federal employees on a par with employees in comparable jobs in private industry in the designated wage area. Or, as it is stated in officialese, "The level of rates of pay will be maintained in line with prevailing levels for comparable work within a local wage area. . . ." FPM Supp. 532–1, p. 1. This policy is implemented through wage setting machinery including the use of peri-

odic wage surveys within the local wage area.

In 1968 the basic statute was amended by Public Law 90–560, 5 U.S.C. § 5343 (d) as added by Public Law 92–392, August, 1972, otherwise known as the "Monroney Amendment." This amendment states:

When a wage survey is made for the purpose of establishing wage schedules for employees to whom this section applies, the agency or agencies making the survey shall determine whether there exists in the wage survey area a sufficient number of comparable positions in private industry to establish wage schedules for the principal types of Federal positions for which the survey is made. The determination shall be in writing and shall take into consideration all relevant evidence, including evidence submitted by employee organizations recognized as representative of employees in the area. When it is determined that there is an insufficient number of comparable positions in private industry to establish such wage schedules, the agency or agencies making the survey shall establish rates for such positions in accordance with rates paid for positions in private industry in the nearest wage area which is determined by the agency or agencies involved to be most similar in the nature of its population, employment, manpower, and industry to the wage area for which the survey is being made. The Civil Service Commission shall prescribe regulations necessary for the administration of this subsection.

The basic purpose of the "Monroney Amendment" was to remedy a situation which existed in certain local wage areas where a prevailing wage rate for certain types of jobs in private industry could not be computed because there was an insufficient number of positions in private industry. This purpose was to be accomplished by requiring the Commission to make an out-of-area wage survey for those wage areas. The wage survey was to be made in the nearest wage area which had sufficient comparable positions, and the information obtained in that survey would be used in determining the wages in the subject area.

Following enactment of the "Monroney Amendment" the Civil Service Commission undertook to implement the amendment through regulations delineating the circumstances and conditions which must exist in order to require an out-of-area wage survey. Included in these regulations was a definition of the term "principal types of federal positions." These regulations were issued on March 12, 1969, in Federal Personnel Manual Letter No. 532–13.

Following the issuance of these regulations, but prior to their implementation, the Civil Service Commission decided that implementation of the regulations as issued could result in severe discrepancies in wage rates between employees in comparable positions. Therefore, the Commission issued CSC Bulletin 532–4 delaying implementation of the regulations pending a review of their operational effect.

After a comprehensive review the Commission decided that the regulations as written were unworkable and a new set of regulations would have to be issued. These regulations, known as Monroney II, were issued on July 14, 1970. The basic change in the new regulations involved the re-definition of the term "principal types of federal positions." These regulations were implemented on July 14, 1970, and they are currently in effect.

The Monroney Amendment was reenacted without change by Congress as a part of the overall pay scheme in August, 1972, in Public Law 92–392, over two years after the implementation of the Monroney II regulations. It is not contested that under the guidelines of the regulations currently in effect, (Monroney II), the named plaintiffs do not qualify for an out-of-area wage survey. The plaintiffs do allege that under

the regulations as originally issued on March 12, 1969, or under any reasonable interpretation of the Monroney Amendment, the named plaintiffs do qualify for an out-of-area wage survey. There are conflicting afidavits in the record as to whether the plaintiffs would have qualified for an out-of-area wage survey in 1968 under the regulations as originally issued. However, the court has determined that this is not a material fact.

The plaintiffs originally sought to have the Monroney II regulations declared invalid, and the regulations as originally drafted instated. The plaintiffs now take the position that Monroney II regulations are invalid and that either Monroney I regulations should be instated or the Commission should adopt new regulations which accurately implement the Monroney Amendment. The plaintiffs also seek back pay which they allege they would have been entitled to had the Monroney Amendment been properly implemented.

## CONCLUSIONS OF LAW

The court has jurisdiction over this action under 28 U.S.C. § 1346(a)(2).

The major issue in this case is whether the Commission in adopting the regulations known as Monroney II, Section 532.503 of its regulations (found in Subpart E of Part 532, Title 5, CFR) acted in a manner proscribed by 5 U.S.C. § 706. Under 5 U.S.C. § 702 "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." However, the scope of this review is severely limited by 5 U.S.C. § 706. Section 706 states in pertinent part:

The reviewing court shall—

\*    \*    \*    \*    \*    \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity,

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

It is not contended that the Commission exceeded its statutory authority in establishing regulations under the Monroney Amendment. The Commission is charged by law with the administration of the federal hourly wage structure, Title 5, United States Code. Furthermore, the Amendment itself provides that "The Civil Service Commission shall prescribe regulations necessary for the administration of this subsection." There is no contention that subsection (B) of 5 U.S.C. § 706 provides grounds for holding these regulations unlawful.

Since (B) and (C) do not provide grounds for overturning the Commission's action in establishing the regulations, the plaintiff must show that the action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or the defendant's motion for summary judgment must be granted.

The plaintiffs' principal argument is that Monroney II is clearly contrary to the congressional intent in passing the Monroney Amendment. While this is not a specific ground for holding agency action unlawful, the court will assume that the plaintiff is alleging that because Monroney II is allegedly contrary to congressional intent it falls within the ambit of subsection (A)

The plaintiff contends that the definition of "principal types of federal positions" adopted by Monroney II serves to exclude from an out-of-area wage survey, persons Congress intended to be included when it passed the Monroney Amendment. The Monroney Amendment requires an out-of-area wage survey for all "principal types of federal positions," which meet the Amendment's other criteria. Since the term "principal types of federal positions" had no prior meaning in the statutes and regulations and the legislative history of the

statute is devoid of any definition of the term, the Commission was required to define the term in issuing regulations implementing the statute.

Under the first set of regulations the phrase was defined in terms of the number of people in a particular job. Thus, a separate determination would be made for individual positions such as aircraft mechanic, aircraft propellor mechanic and all other positions. Based upon the number of people in those jobs some would qualify and some would not for an out-of-area wage survey. Following a comprehensive review of these regulations as applied, the Commission determined that implementation would result in a severely distorted wage structure. Therefore, the regulations were withdrawn before they were implemented.

The new regulations, Monroney II, defined the term "principal types of federal positions" in terms of the "dominant industry" in the particular wage area. Thus, to qualify as a "principal type of federal position" the position must constitute at least 25 percent of the total wage employment in the wage area, or contain at least 1,000 employees when the total wage employment in the area exceeds 4,000.

The plaintiff contends that Monroney II in adopting the "dominant industry" definition of "principal types of federal positions" excluded employees that would otherwise be eligible for an out-of-area wage survey, but who are not in a "dominant industry" in their wage area. In support of this position the plaintiff cites several statements by Congressmen concerning the purpose of the Monroney Amendment. Typical of these statements are the comments of Congressman Henderson during a House discussion of the bill:

> There are, however, areas in our great country where the local economy just does not provide a sufficiently adequate sample of jobs to match some of the highly sophisticated jobs we now have in the Defense Establishment. Our military bases, where we find some of the most complex machines and equipment in our total economy, are often located in isolated areas. And, the isolation is, by and large, excellent, except for one thing—it gets to be rather difficult at times to find comparable jobs in the local private economy for some of the unusual, highly specialized jobs that are found on military bases.
>
> Mr. Speaker, the action proposed by this conference report, to amend the wage board pay procedures, is being taken to bring about fair and equitable pay for those exceptional cases where there are no comparable jobs in the surrounding area and thereby to assure that the Government continues to have an adequate, high-quality work force.

Congressional Record—House, October 1, 1968, p. 28866.

The plaintiff contends that by requiring the position to be in a "dominant industry" in the area, many persons intended by Congress to be included, as evidenced by the above comment, are not covered, and therefore, the intent of Congress has been thwarted. However, it should be noted that the House managers of the bill in a report to the House stated:

> This special authority is not designated to require that every single job within the wage survey area be matched with similar jobs in private enterprise. It is not intended that agency wage boards impose upon private industry to such an extent that item-by-item surveys are conducted. The present method of sampling, so long as it is accurate, effective, and in accordance with uniform practices for all such wage survey areas, may be continued.

Congressional Record—House, October 1, 1968, p. 28864.

The scope of judicial review of agency action is defined by well settled principles of law. Thus, it is not the duty of the court to pass on the wisdom

of the action, but as the Fifth Circuit stated, "Rather, our task is limited to determining whether the [agency] has abused its discretion or exceeded its statutory authority in adopting the [challenged regulations]." Ray Baille Trash Hauling, Inc. v. Kleppe, 477 F.2d 696, 704 (5th Cir. 1973). Nor, is it within our purview to pass on the merits of particular agency action where the agency has exercised its discretion in choosing a method of achieving a legislative objective. Thus, as the Third Circuit said in Kendler v. Wirtz, 388 F.2d 381, 383 (3rd Cir. 1968), quoted with approval in *Ray Baille Trash Hauling, Inc., supra:*

> A mere difference of judgment between a person disadvantageously affected by agency action and the responsible head of the agency over the merits of particular administration action as a means of achieving a legislative objective, when Congress has assigned authority to make and act upon such determinations to the agency, is not judicially reviewable.

In the instant case the Commission was specifically charged with the responsibility of issuing regulations implementing the statute. The Commission found after reviewing the legislation that more than one interpretation of the term "principal types of federal positions" was possible. Faced with the responsibility of implementing the legislation, the Commission determined that defining that phrase in terms of the "dominant industry" in the wage area more accurately reflected the intent of Congress, and did least violence to the overall principle of "equal pay for equal work." This was clearly a reasonable interpretation of the statute, and within the scope of the Commission's statutory duty.

This conclusion is supported by several well settled principles of judicial review. The reviewing court is entitled to give great weight to the interpretation given a statute by the agency charged with the enforcement of the statute. Thorpe v. Housing Authority of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed. 2d 616 (1965); Federal Deposit Ins. Corp. v. Sumner Financial Corp., 451 F. 2d 898 (5th Cir. 1972). Thus, the Supreme Court said in *Thorpe, supra:*

> As we stated in Bowles v. Seminole Rock Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 [1702] (1945), when construing an administrative regulation, "a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt. . . . [T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." (footnotes omitted)

*Id.* 393 U.S. 268, 89 S.Ct. at 523, 21 L. Ed.2d at 481.

And, this is true even though the agency's interpretation is not the only possible interpretation. Thus, the Court stated in Udall v. Tallman, *supra:*

> When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. "To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." (citations omitted)

*Id.* 380 U.S. 1, 85 S.Ct. at 801, 13 L.Ed. 2d at 625.

The principle that an agency's interpretation is entitled to great weight is especially applicable where the interpretation concerns matters within the agency's expertise. Thus, the Fifth Circuit stated in Transcontinental Bus System, Inc., v. C. A. B., 383 F.2d 466 (5th Cir. 1967):

In addition, the administrative agency is continually involved and vitally concerned with the operation of the statute; the expertise developed through its intimate contact with the problems of the area and the operation of the statute should not be lightly ignored. *Id.* at 480.

That the Civil Service Commission has expertise in the area of the federal hourly wage structure is not questioned. The Commission is the agency charged with the operation of the Federal Hourly Wage System. It administers the system and established the regulations under which it operates.

Thus, in support of its conclusion that the regulations are reasonable, the court finds an interpretation, reasonable on its face, by an administrative agency charged with enforcement of the statute with admitted expertise in the area, which was arrived at after considerable review and evaluation. The court is unable to say that such an interpretation is arbitrary, capricious or an abuse of discretion.

 It should also be noted that although the plaintiff contends the regulations are contrary to congressional intent, these regulations had been in effect for over two years when Congress reenacted the Monroney Amendment language without change as a part of the overall federal pay plan. Public Law 92–392, August 19, 1972. There is no evidence that Congress expressly commented on these regulations. Since these regulations had been in effect for over two years, it is probable that Congress was aware of them. Certainly many members of the class were aware of the regulations they now complain of and had an opportunity when the Amendment was reenacted to have made known to Congress their problems. In any event, the reviewing court is entitled to give weight to the construction of a statute by an agency charged with enforcement if the statute is subsequently reenacted by Congress without amendment. Red Lion Broadcasting Co. v. F. C. C., 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969), and cases cited therein.

The court therefore concludes that the regulations known as Monroney II are not unreasonable, arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, and they are lawful. Since the court concludes that these regulations are lawful and valid, the issue of whether the plaintiffs would have been entitled to an out-of-area wage survey under a different interpretation of the Monroney Amendment is not material to the cause. Since there is no genuine dispute as to any material fact, the case is subject to a summary judgment pursuant to Rule 56(b), Federal Rules of Civil Procedure.

Therefore, it is ordered, adjudged and decreed that the Motion for Summary Judgment by the defendant is granted.

Costs are taxed against the plaintiffs.