**MARINE TRANSPORT LINES, INC., Plaintiff,**

v.

**John F. LEHMAN, et al., Defendants,**

**Seafarers International Union of North America, Atlantic Gulf Lakes and Inland Waters District, AFL–CIO, Intervenor-Defendant.**

**Civ. A. No. 85–3437.**

United States District Court, District of Columbia.

Nov. 20, 1985.

H. Clayton Cook, Ronald D. Eastman, Arnold B. Podgorsky, Washington, D.C., for plaintiff.

Charles F. Flynn, Asst. U.S. Atty., Washington, D.C., for defendants.

Richard Gabriele, New York City, Terry R. Yellig, Washington, D.C., for intervenor.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

This case presents a controversy between a disappointed bidder and the federal government arising during the course of procurement negotiations. Litigation of this nature is filed with some frequency in this District Court. As is true in many such cases, the legal issues presented are involved and serious.

## INTRODUCTION

The plaintiff Marine Transport Lines, Inc. ("Marine Transport" or "MTL") brings this action against the Secretary of the Navy and the Commander of the Military Sealift Command ("Sealift Command" or "MSC") seeking to establish and to enforce its right to a procurement contract for the operation of twelve oceanographic vessels. The plaintiff charges that it negotiated and entered into a lawful and binding agreement with the Sealift Command but that now the government refuses to pursue the necessary steps to implement the agreement, refuses to execute required contract documents, and intends and has taken steps to reopen the entire procurement efforts. Marine Transport seeks preliminary and permanent injunctive relief, prohibiting the government from taking any action to avoid or set aside the contract award or to solicit new offers for the operation of the vessels; a declaratory judgment that they have a contract with the Sealift Command, and a writ of mandamus requiring the government to execute the contract. The plaintiff claims that the defendants have violated applicable procurement law and regulations, that their actions are arbitrary and capricious and violate provisions of the Administrative Procedure Act, 5 U.S.C. § 551 et seq.

Marine Transport commenced this proceeding in the United States District Court for the District of New Jersey on October 4, 1985. Later, on application of the government, the proceeding was transferred to this District because of an earlier-filed case pending in this Court, involving similar and related factual and legal issues, *Seafarers International Union of North America, etc., AFL–CIO ("SIU") v. Donnelly, et al.*, C.A. No. 85–2423 (filed July 29, 1985). *See infra*, p. 5. Following transfer, SIU was granted leave to intervene as party defendant in this proceeding.

On November 8, 1985, the Court scheduled and considered argument on the plaintiff's motion for a preliminary injunction. A motion of the government for summary judgment was also at issue and argued. The parties agreed that there were no disputed material facts, that only legal issues remained for resolution, and that the stage was thus set and it was appropriate to render a final ruling on the merits.

On November 12, 1985, the Court entered an order denying the plaintiff's application for a preliminary injunction and granting the government's motion for summary judgment. In accordance with that Order, this Memorandum Opinion explains the reasons for the Court's ruling.

## BACKGROUND

The essential, material and undisputed facts are briefly stated. In March 1984, the Military Sealift Command, a division of the Department of the Navy, issued a Request for Proposal ("RFP") seeking bids from private commercial contractors for the operation and maintenance of twelve oceanographic vessels. The ships were owned by the Navy and were used to support oceanographic research projects conducted by the Naval Oceanographic Office. In prior years the vessels were manned and operated by civil service personnel—mariners—employed by the Navy.

The RFP procedure was governed by a directive of the Office of Management and Budget ("OMB"), Circular A–76. The Circular required the Navy to prepare a cost estimate for operations of the ships by civil service mariners. Interested private contractors could also submit bid proposals. A cost comparison would then determine the most economical method for operation of the ships, either by in-house perform-

ance through the Navy or by contracting-out to private companies.

In issuing the RFP, the Sealift Command made no determination and did not require that it be subject to the provisions of tne Service Contract Act of 1965 ("SCA" or "Act"), 41 U.S.C. §§ 351 *et seq.* The solicitation did not require the winning bidder to pay wages and fringe benefits in accordance with the Act. Nor did the RFP include any of the provisions of the Federal Acquisition Regulations ("FAR"), 48 C.F.R. Chapter 1, provisions which are required in solicitations subject to the Service Contract Act.

Initial offers in response to the RFP were received by the Sealift Command in January 1985. The plaintiff was one of several companies submitting an offer. After receiving offers in response to the bidding process and pursuant to 48 C.F.R. § 15.609, the contracting officer for the Sealift Command established a "competitive range," which included all offerors having a reasonable chance of winning the contract. Three of the initial offers, including the plaintiff's, were considered to be within the competitive range. Conferences were then held with the three offerors pursuant to 48 C.F.R. § 15.610, and their "best and final" offers were requested, pursuant to 48 C.F.R. § 15.611. Those offers were received on April 15, 1985. The offers of the private commercial contractors were then compared with the cost of continued operation of the oceanographic vessels by the government. Following the comparison, it was determined that the plaintiff had submitted the lowest-priced proposal, as compared both with those submitted by the other private competitors and with the government proposal.

In accordance with Circular A–76, plaintiff's price proposal covering the contract term for each vessel was made available for public review. However, their proposed ship manning concept, the wages it planned to pay its employees and other details of their offer, were not revealed publicly. On May 9, 1985, MSC's Contracting Officer notified all original offerors that

> [A]s the cost comparison establishes that the cost of contract performance is less than the cost of Government performance it has been *tentatively decided* to award a contract to Marine Transport Lines, Inc. This *tentative decision* is subject to an administrative appeals procedure ... based on requirements of OMB Circular A–76 and currently applicable commercial activities (CA) program guidance promulgated by the Chief of Naval Operations.

(Emphasis added). The deadline for the filing of an appeal was June 3, 1985; fourteen appeals were filed. Copies of the appeals were made available to all directly affected parties. One appeal alleged that the Service Contract Act of 1965 was applicable to the solicitations.

In mid-July 1985, the reviewing officer denied all appeals. Following his decision, the Seafarers International Union filed suit in this Court, *see supra* p. 2, alleging that the Service Contract Act and implementing regulations required that the RFP solicitation and resulting contract include applicable provisions of the Act. Named as defendants in that proceeding were the Secretary of the Navy, the Military Sealift Command official involved in the RFP, the Secretary of Labor, and Marine Transport Lines. The complaint requested that the Navy be enjoined from further action under the RFP solicitation and that implementation of the tentative decision made on the Marine Transport offer be enjoined until the requirements of the Act were met.

The Service Contract Act of 1965 establishes basic labor standards governing the award and performance of government contracts for services in excess of $2,500 where the principal purpose of the contract is to furnish services to the government through use of service employees. Contracts covered by the Act must include provisions specifying that a minimum level of wages be paid, that a minimum level of fringe benefits be provided, and that the work environment meet minimum stan-

dards of health and safety. Enforcement of the Act was delegated by the Congress to the Department of Labor ("DOL"). Following that delegation, the Secretary of Labor promulgated implementing regulations codified at 29 C.F.R. Part 4. The determination of the level of wages and benefits to be paid on a particular contract was to be made by the Department's Wage and Hour Administration.

On August 2, 1985, representatives of the Departments of Labor and Defense met with Department of Justice representatives to discuss the recently-filed SIU complaint. At that conference the Justice Department representative advised those of the Defense and Labor Departments that the official government position would be that the Service Contract Act applied to the RFP solicitation. Accordingly, on August 5, 1985, the Deputy Administrator of the Wage and Hour Division of the Department of Labor notified the Sealift Command that the RFP under consideration was subject to the Act and that the labor standards requirement applied to the portions of the contract services performed within the United States. The August 5 letter requested that appropriate corrective action be taken "to include in the RFPs and contracts the Act's stipulations...."

Thereafter, on August 16, the Sealift Command contracting officer issued Amendment 0018 to the RFP. The amendment rescinded the May 9, 1985 tentative award to the plaintiff and advised all offerors in the competitive range that the SCA applied to this solicitation. The amendment also added the requisite SCA clauses and notified offerors that revised best and final offers would be requested after receipt of a wage determination from the Labor Department.

In March 1984, when the Sealift Command initiated the RFP, a revised DOL regulation was in effect. The revision was promulgated in October 1983 and became effective in January 1984. The revision effectively exempted contracts for oceanographic vessels from coverage under the Service Contract Act. The new regulation,

codified at 29 C.F.R. § 4.112(b)(2) provided that

a contract which is performed essentially outside the United States, with only an incidental portion performed within the United States as defined is not covered by the Act.

Because the vessels performing the oceanographic research undertook those services primarily in international waters, the contract officer for Sealift Command concluded at the time of solicitation that the Act did not apply.

However, the revised 1984 regulation was challenged immediately by the Seafarers Union and other labor groups, and on March 12, 1985, the Court of Appeals for the District of Columbia Circuit ruled in *AFL–CIO v. Donovan*, 757 F.2d 330 (D.C. Cir.1985), that it was enacted unlawfully because the Department of Labor failed to comply with the notice and comment provisions of the Administrative Procedure Act when it promulgated the revision. As a consequence, because the revised 1984 regulation was declared null and void, the 1983 regulation continued to govern all coverage questions.

In early October 1985, the contract officer issued Amendment 0019, which set October 15, 1985 as the date by which all offerors were to submit revised best and final offers. The amendment required that all offerors agree to comply with the SCA throughout the period of the contract, and to authorize the release of the same information about their bids that had already been publicly disclosed about the plaintiff's bid. On October 4, 1985, the same date as the issuance of Amendment 0019, Marine Transport filed this suit in the District of New Jersey federal court, seeking declaratory and injunctive relief to prevent any rebidding of the RFP by the Sealift Command.

## ANALYSIS

■ The grant of a preliminary injunction is a drastic and unusual judicial measure. The award of such relief is not a matter of right, even though the petitioner

claims and may incur irreparable injury. The matter is addressed to the sound discretion of the Court, and absent a strong showing of need, it need not be granted. *Yakus v. United States,* 321 U.S. 414, 440, 64 S.Ct. 660, 674, 88 L.Ed. 834 (1944). Where an injunction may adversely affect a public interest, the Court, in its exercise of discretion, may withhold such relief even though such denial may prove burdensome and cause hardship to the petitioner.

In *Virginia Petroleum Jobbers Association v. FTC,* 259 F.2d 921 (D.C.Cir.1958) our Circuit Court articulated four factors to be weighed before granting a preliminary injunction: whether a strong showing has been made that the petitioner is likely to prevail on the merits; whether a showing has been made that without such relief, irreparable injury would result; whether the issuance of a stay would substantially harm the interests of other parties in the proceedings; and whether the public interest supports granting such relief. *Id.* at 925. Application of the first factor to the underlying and uncontroverted facts in this proceeding leads to the conclusion that Marine Transport has failed to meet its burden and that the government is entitled to a final judgment on the merits.

■ Aside from those factors, however, when a government procurement decision is the subject of litigation, the party adversely affected by a government contract award and who challenges the legality of the decision

> bear[s] a heavy burden of showing either that (1) the procurement official's decisions on matters committed primarily to his own discretion had no rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations.

*Kentron Hawaii Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973). *See Steinthal v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir. 1971); *Wheelabrator Corp. v. Chafee,* 455 F.2d 1306, 1312 (D.C.Cir.1971).

■ The plaintiff cannot reasonably claim that the RFP was not subject to the provisions of the Service Contract Act.

The August 5, 1985 Department of Labor letter determined that the Act applied to the procurement. The Secretary of Labor or his representative was the designated authority to interpret and enforce the Act. His interpretation of the Act becomes of controlling weight unless plainly erroneous or inconsistent with the regulation. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (quoting *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 413–414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). The Secretary of Labor's determination had a rational basis and was consistent with the statute and the regulation.

■ The August 16, 1985 decision of the Military Sealift Command, amending the RFP (Amendment 0018) by rescinding the tentative award of the contract to the plaintiff, and the later October 4th amendment (Amendment 0019), specifying that revised "best and final" offers be submitted by October 15, 1985, had a rational basis for support and were not clearly illegal.

**A.**

For Marine Transport to prevail it has the burden of demonstrating that it had an enforceable contract with the government. The plaintiff contends that it was awarded a contract on May 9, 1985 and that while appropriate documents had not been executed, only some few ministerial acts remained to be performed, since all conditions precedent to the award had been satisfied. It further contends that if the contract was not consummated on May 9, by mid-July 1985, when the appeals process was concluded, nothing further was to be done.

Marine Transport misreads what transpired. MSC's contracting officer notified the plaintiff and the other offerors on May 9, that the decision to award the contract was tentative, not that an award of the contract had been made. The notice also provided that the tentative decision was subject to an administrative appeal process. That process rendered the tentative deci-

sion even further removed from a final award of the contract.

Representations made by Marine Transport in the earlier-filed and still-pending proceeding, *SIU v. Donnelly, supra* p. 2, are also relevant, for they clearly show that the plaintiff did not consider that it had been awarded a contract. On July 31, 1985, Marine Transport stipulated with the government that no award on the RFP at issue here would be made until September 13, 1985 or until the Court ruled on SIU's motion for a preliminary injunction. Stipulation of Briefing Schedule for Plaintiff's Motion for a Preliminary Injunction, ¶¶ 5 and 6, July 31, 1985. That stipulation is a part of the official record in *SIU v. Donnelly.*

Marine Transport also overlooks the fact that the Department of Defense Authorization Act of 1981, Pub.L. 96–342 (1980), provides that specific notification be transmitted to Congress under these circumstances. Section 502(a) requires that the Secretary of Defense provide certain certifications to Congress and that reporting requirements be observed when private commercial contractors are utilized, as here. The notification and reporting requirements were to be met by an official of the Department of the Navy. Such a report has never been submitted.

■ Finally, it should be clear that awarding a contract with the intention of significantly modifying the contract after award is improper. *A & J Manufacturing,* 53 Comp.Gen. 838, 74 CPD ¶ 240 (1974). *See also, Tecom, Inc.,* 84–2 CPD ¶ 152 (1984); *Central Mechanical, Inc.,* 82–1 CPD ¶ 91 (1982). Application of the Service Contract Act to this solicitation or to any contract arising from this solicitation is a significant modification. Consequently, the contracting officer could not legally award the contract to Marine Transport, while intending to later modify the solicitation to include provisions required by the SCA and the Federal Acquisition Regulations, 48 C.F.R. Chapter 1.

The addition of the Service Contract Act requirements made it impossible for the contracting officer to determine that the plaintiff had submitted the most advantageous offer. Section 15.606 of 48 C.F.R. provides that

(a) When, either before or after receipt of proposals, the Government changes, relaxes, increases, or otherwise modifies its requirements, the contracting officer shall issue a written amendment to the solicitation.

(b) In deciding which firms to notify of a change, the contracting officer shall consider the stage in the acquisition cycle at which the change occurs and the magnitude of the change, as follows:

\*   \*   \*   \*   \*   \*

(3) If the competitive range (see 15.-609(a) ) has been established, only those offerors within the competitive range shall be sent the amendment.

Section 15.611(c) of 48 C.F.R. provides that
After receipt of best and final offers, the contracting officer should not reopen discussions unless it is clearly in the Government's interest to do so (e.g., it is clear that information available at that time is inadequate to reasonably justify contractor selection and award based on the best and final offers received). If discussions are reopened, the contracting officer shall issue an additional request for best and final offers to all offerors still within the competitive range.

The contracting officer properly amended the solicitation in accordance with 48 C.F.R. § 15.606 and properly requested a new round of best and final offers in accordance with 48 C.F.R. § 15.611(c).

### B.

■ In order to obtain a preliminary injunction, Marine Transport must show that it is likely to prevail on the merits—in other words, that it had been awarded a contract. This it has not done. Rather the government has shown, on the undisputed facts before the Court, that no contract was ever awarded and that the plaintiff was entitled to no preference, once it had been decided to apply the provisions of the SCA to the

solicitation in question. Because the Court grants the government's motion for summary judgment, it need not address further the question of whether plaintiff is entitled to preliminary relief, for the merits of this action have already been reached. Any issue concerning the likelihood of irreparable injury is, of course, moot.

Because there are no material facts in dispute, and for the above reasons, the defendants are entitled to a final judgment as a matter of law.