325 U.S. 410 (1945)
BOWLES, PRICE ADMINISTRATOR,
v.
SEMINOLE ROCK & SAND CO.
No. 914.
Supreme Court of United States.
Argued April 26, 27, 1945.
Decided June 4, 1945.
CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.
*411 Mr. Henry M. Hart, Jr., pro hac vice, with whom Solicitor General Fahy, Messrs. Robert L. Stern and David London were on the brief, for petitioner.
Mr. Robert H. Anderson, with whom Messrs. Robert Ruark, Bennett H. Perry and J.M. Hemphill were on the brief, for respondent.
MR. JUSTICE MURPHY delivered the opinion of the Court.
Our consideration here is directed to the proper interpretation and application of certain provisions of Maximum Price Regulation No. 188,[1] issued by the Administrator of the Office of Price Administration under Section 2 (a) of the Emergency Price Control Act of 1942.[2]
*412 Respondent is a manufacturer of crushed stone, a commodity subject to Maximum Price Regulation No. 188. In October, 1941, respondent contracted to furnish the Seaboard Air Line Railway crushed stone on demand at 60 cents per ton, to be delivered when called for by Seaboard. This stone was actually delivered to Seaboard in March, 1942.
In January, 1942, respondent had contracted to sell crushed stone to V.P. Loftis Co., a government contractor engaged in the construction of a government dam, for $1.50 a ton.[3] This stone was to be delivered by respondent by barge when needed at the dam site. A small portion of stone of a different grade than that sold to Seaboard was delivered to Loftis Co. during January pursuant to this contract. For some time thereafter, however, Loftis Co. was unable to pour concrete or to store crushed stone at the dam site. Respondent thus made no further deliveries under this contract until August, 1942, at which time stone of the same grade as received by Seaboard was delivered to Loftis Co. at the $1.50 rate.
Subsequently, and after the effective date of Maximum Price Regulation No. 188, respondent made new contracts to sell crushed stone to Seaboard at 85 cents and $1.00 per ton. Alleging that the highest price at which respondent could lawfully sell crushed stone of the kind sold to Seaboard was 60 cents a ton, since that was asserted to be the highest price charged by respondent during the crucial month of March, 1942, the Administrator of the Office of Price Administration brought this action to enjoin respondent from violating the Act and Maximum Price Regulation No. 188.[4] The District Court dismissed the action *413 on the ground that $1.50 a ton was the highest price charged by respondent during March, 1942, and that this ceiling price had not been exceeded. The Fifth Circuit Court of Appeals affirmed the judgment. 145 F.2d 482. We granted certiorari because of the importance of the problem in the administration of the emergency price control and stabilization laws.
In his efforts to combat wartime inflation, the Administrator originally adopted a policy of piecemeal price control, only certain specified articles being subject to price regulation. On April 28, 1942, however, he issued the General Maximum Price Regulation.[5] This brought the entire economy of the nation under price control with certain minor exceptions. The core of the regulation was the requirement that each seller shall charge no more than the prices which he charged during the selected base period of March 1 to 31, 1942. While still applying this general price "freeze" as of March, 1942, numerous specialized regulations relating to particular groups of commodities subsequently have made certain refinements and modifications of the general regulation. Maximum Price Regulation No. 188, covering specified building materials and consumers' goods, is of this number.
The problem in this case is to determine the highest price respondent charged for crushed stone during March, 1942, within the meaning of Maximum Price Regulation No. 188. Since this involves an interpretation of an administrative *414 regulation a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt. The intention of Congress or the principles of the Constitution in some situations may be relevant in the first instance in choosing between various constructions. But the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation. The legality of the result reached by this process, of course, is quite a different matter. In this case the only problem is to discover the meaning of certain portions of Maximum Price Regulation No. 188. Our only tools, therefore, are the plain words of the regulation and any relevant interpretations of the Administrator.
Section 1499.153 (a) of Maximum Price Regulation No. 188 provides that "the maximum price for any article which was delivered or offered for delivery in March, 1942, by the manufacturer, shall be the highest price charged by the manufacturer during March, 1942 (as defined in § 1499.163) for the article." Section 1499.163 (a) (2)[6] in turn provides that for purposes of this regulation the term:
"`Highest price charged during March, 1942' means
"(i) The highest price which the seller charged to a purchaser of the same class for delivery of the article or material during March, 1942; or
"(ii) If the seller made no such delivery during March, 1942, such seller's highest offering price to a purchaser of the same class for delivery of the article or material during that month; or
"(iii) If the seller made no such delivery and had no such offering price to a purchaser of the same class during March, 1942, the highest price charged by the seller during March, 1942, to a purchaser of a different class, adjusted *415 to reflect the seller's customary differential between the two classes of purchasers . . ."
It is thus evident that the regulation establishes three mutually exclusive rules for determining the highest price charged by a seller during March, 1942. The facts of each case must first be tested by rule (i); only if that rule is inapplicable may rule (ii) be utilized; and only if both rules (i) and (ii) are inapplicable is rule (iii) controlling.
The dispute in this instance centers about the meaning and applicability of rule (i). The Administrator claims that the rule is satisfied and therefore is controlling whenever there has been an actual delivery of articles in the month of March, 1942, such as occurred when respondent delivered the crushed rock to Seaboard at the 60-cent rate. The respondent, on the other hand, argues that there must be both a charge and a delivery during March, 1942, in order to fix the ceiling price according to rule (i). Since the charge or sale to Seaboard occurred several months prior to March, it is asserted that rule (i) becomes inapplicable and that rule (ii) must be used. Inasmuch as there was an outstanding offering price of $1.50 per ton for delivery of crushed stone to Loftis Co. during the month of March, 1942, although the stone was not actually delivered at that time, respondent concludes that the requirements of rule (ii) have been met and that the ceiling price is $1.50 per ton.
As we read the regulation, however, rule (i) clearly applies to the facts of this case, making 60 cents per ton the ceiling price for respondent's crushed stone. The regulation recognizes the fact that more than one meaning may be attached to the phrase "highest price charged during March, 1942." The phrase might be construed to mean only the actual charges or sales made during March, regardless of the delivery dates. Or it might refer only to the charges made for actual delivery in March. Whatever may be the variety of meanings, however, rule *416 (i) adopts the highest price which the seller "charged . . . for delivery" of an article during March, 1942. The essential element bringing the rule into operation is thus the fact of delivery during March. If delivery occurs during that period the highest price charged for such delivery becomes the ceiling price. Nothing is said concerning the time when the charge or sale[7] giving rise to the delivery occurs. One may make a sale or charge in October relative to an article which is actually delivered in March and still be said to have "charged . . . for delivery . . . during March." We can only conclude, therefore, that for purposes of rule (i) the highest price charged for an article delivered during March, 1942, is the seller's ceiling price regardless of the time when the sale or charge was made.
This conclusion is further borne out by the fact that rule (ii) becomes applicable only where "the seller made no such delivery during March, 1942," as contemplated by rule (i). The absence of delivery, rather than the absence of both a charge and a delivery during March, is necessary to make rule (i) ineffective, thereby indicating that the factor of delivery is the essence of rule (i). It is apparent, moreover, that the delivery must be an actual instead of a constructive one. Section 1499.20 (d) of General Maximum Price Regulation, incorporated by reference into Maximum Price Regulation No. 188 by § 1499.151, defines the word "delivered" as meaning "received by the purchaser or by any carrier . . . for shipment to the purchaser" during March, 1942. Thus an article is not *417 "delivered" to a purchaser during March because of the existence of an executory contract under which no shipments are actually made to him during that month. In short, the Administrator in rule (i) was concerned with what actually was delivered, not with what might have been delivered.
Any doubts concerning this interpretation of rule (i) are removed by reference to the administrative construction of this method of computing the ceiling price. Thus in a bulletin issued by the Administrator concurrently with the General Maximum Price Regulation entitled "What Every Retailer Should Know About the General Maximum Price Regulation,"[8] which was made available to manufacturers as well as to wholesalers and retailers, the Administrator stated (p. 3): "The highest price charged during March 1942 means the highest price which the retailer charged for an article actually delivered during that month or, if he did not make any delivery of that article during March, then his highest offering price for delivery of that article during March." He also stated (p. 4) that "It should be carefully noted that actual delivery during March, rather than the making of a sale during March, is controlling." In his First Quarterly Report to Congress, the Administrator further remarked (p. 40) that "`Highest price charged' means one of two things: (1) It means the top price for which an article was delivered during March 1942, in completion of a sale to a purchaser of the same class .. . (2) If there was no actual delivery of a particular article during March, the seller may establish as his maximum price the highest price at which he offered the article for sale during that month." Finally, the Administrator has stated that this position has uniformly been taken by the Office of Price Administration *418 in the countless explanations and interpretations given to inquirers affected by this type of maximum price determination.
Our reading of the language of § 1499.163 (a) (2) of Maximum Price Regulation No. 188 and the consistent administrative interpretation[9] of the phrase "highest price charged during March, 1942" thus compel the conclusion that respondent's highest price charged during March for crushed stone was 60 cents per ton, since that was the highest price charged for stone actually delivered during that month. The two courts below erred in their interpretation of this regulation and the judgment below must accordingly be reversed.
We do not, of course, reach any question here as to the constitutionality or statutory validity of the regulation as *419 we have construed it, matters that must in the first instance be presented to the Emergency Court of Appeals. Lockerty v. Phillips, 319 U.S. 182; Yakus v. United States, 321 U.S. 414, 427-431. Nor are we here concerned with any possible hardship that the enforcement of the 60-cent price ceiling may impose on respondent. Adequate avenues for relief from hardship are open to respondent through the provisions of § 2 (c) of the Act and § 1499.161 of the regulation.
Reversed.
MR. JUSTICE ROBERTS thinks the judgment should be affirmed for the reasons given in the opinion of the Circuit Court of Appeals, 145 F.2d 482.
NOTES
[1] 7 Fed. Reg. 5872, 7967, 8943.
[2] 56 Stat. 23, 24.
[3] The contract actually spoke in terms of $1.50 per cubic yard, but there is no appreciable difference between a cubic yard of crushed stone and a ton of crushed stone.
[4] The Administrator also sought to recover from respondent a judgment under § 205 (e) of the Act for three times the amount by which the sales price of the crushed stone sold by the respondent to Seaboard after the effective date of Maximum Price Regulation No. 188 exceeded 60 cents per ton. The District Court held that the purchaser rather than the Administrator was vested with whatever cause of action existed to recover a judgment under § 205 (e). The Circuit Court of Appeals, however, held that § 205 (e), as amended by § 108 (b) of the Stabilization Extension Act of 1944, 58 Stat. 640, entitled the Administrator rather than the purchaser to bring suit under the circumstances of this case. This aspect of the case is not now before us.
[5] 7 Fed. Reg. 3156.
[6] 7 Fed. Reg. 7968-7969.
[7] Respondent points to the provision in § 302 (a) of the Act, 56 Stat. 36, to the effect that the term "sale" as used in the Act includes "sales, dispositions, exchanges, leases, and other transfers, and contracts and offers to do any of the foregoing," as well as to a similar provision in § 1499.20 (r) of the General Maximum Price Regulation. But such a definition is of no assistance in determining the meaning of the Administrator's use of the phrase "charged . . . for delivery" during March, 1942.
[8] General Maximum Price Regulation, Bulletin No. 2 (May, 1942). Maximum Price Regulation No. 188 established prices "at the identical level of the General Maximum Price Regulation" for articles dealt in during March, 1942. 7 Fed. Reg. 5873.
[9] Respondent points to two allegedly inconsistent interpretations made by the Administrator:

1. On August 20, 1942 (O.P.A. Press Release No. 564), he made certain statements with reference to Amendment 23 to the General Maximum Price Regulation, 7 Fed. Reg. 6615, allowing a different method of maximum price computation where general price increases were announced prior to April 1, 1942, and deliveries at lower prices were made in March under previous contracts. The provisions and applicability of this amendment are not in issue in this case and statements interpreting that amendment have no bearing here.
2. On December 5, 1942 (O.P.A. Press Release No. 1223), he issued a statement interpreting Amendment 38 to the General Maximum Price Regulation and Amendment 3 to Maximum Price Regulation No. 188, 7 Fed. Reg. 10155. These amendments authorized sellers who made general price increases prior to April 1, 1942, to apply the increases to ceiling prices for goods and services delivered during March under long-term contracts. The Administrator's explanation of these amendments, which are not presently before us, is likewise irrelevant in this case.
Indeed, the fact that the Administrator found it necessary to make such amendments is some evidence that under the rules here in issue the price established under a previous contract is the maximum price if that was the highest price for goods actually delivered during March, 1942.