# United States Court of Appeals for the Federal Circuit

05-3064

MADONNA A. LENGERICH,

Petitioner,

v.

DEPARTMENT OF THE INTERIOR,

Respondent.

W. Craig James, Mauk & Burgoyne, of Boise, Idaho, argued for petitioner.

Christian J. Moran, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3064

MADONNA A. LENGERICH,

Petitioner,

v.

DEPARTMENT OF THE INTERIOR,

Respondent.

_____

DECIDED: July 17, 2006

_____

Before MAYER, RADER, and LINN, Circuit Judges.

Opinion for the court filed by Circuit Judge LINN. Dissenting opinion filed by Circuit Judge MAYER.

Madonna A. Lengerich ("Lengerich") appeals from a final decision of the Merit Systems Protection Board ("Board"), affirming the decision of the Department of the Interior that Lengerich's oral requests for firefighter annuity retirement credit under the Civil Service Retirement System ("CSRS") are time barred. See Lengerich v. Dep't of the Interior, No. SE-0831-04-0062-I-1 (M.S.P.B. Oct. 5, 2004) ("Final Order"); Lengerich v. Dep't of the Interior, No. SE-0831-04-0062-I-1 (M.S.P.B. Aug. 31, 2004) ("Initial Decision"). Because the Board's decision is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, we affirm.

## I. BACKGROUND

Under 5 U.S.C. § 8336(a)-(b), federal employees generally are eligible to retire with an annuity upon reaching 55 years of age and completing 30 years of service or upon reaching 60 years of age and completing 20 years of service. However, a qualified law enforcement officer or firefighter who completes 20 years of service is eligible to retire upon attaining 50 years of age. See 5 U.S.C. § 8336(c) (2000). Such a qualified employee receives an enhanced annuity, but is subject to mandatory early retirement and larger salary deductions during employment. See 5 U.S.C. §§ 8335, 8336(c) (2000). An employee can qualify for the enhanced annuity either by serving in a position that has been approved for law enforcement officer or firefighter service credit as such, or by applying to his or her employing agency for enhanced annuity service credit and establishing that his or her position and duties qualify for such credit. See 5 C.F.R. §§ 831.903-831.906 (2006).

Prior to 1988, regulations promulgated by the Office of Personnel Management ("OPM") instructed that "the appropriate administrative authority of an agency," with the concurrence of OPM, shall determine the applicability of retirement credit. See 5 C.F.R. §§ 831.902, 831.905 (1986). Those regulations did not address how or when an individual should request service credit from his or her employing agency. Id. Consistent with the regulations then in place, and to assist employees seeking to qualify, the agency at issue in this case, the Department of Interior, Bureau of Land Management ("Bureau" or "Agency") published instruction memoranda regarding enhanced annuity service credit. See Bureau of Land Mgmt., Dep't of Interior, Instruction Memorandum No. 80-660, Special Retirement Provisions for Firefighters

05-3064                                    2

(July 25, 1980) (hereinafter the "1980 Agency Memorandum"); Bureau of Land Mgmt., Dep't of Interior, Instruction Memorandum No. 83-663, Requests for Retirement Under PL 92-350 for Law Enforcement and Firefighter Personnel (July 6, 1983) (hereinafter the "1983 Agency Memorandum") (collectively the "Agency Memoranda"). These Agency Memoranda prescribe how an employee should request a "verification" of whether his or her service qualified for such credit, encourage all potentially eligible employees to request a verification of service, adopt forms for making a request for service credit, and urge employees to retain a copy of the request. See Agency Memoranda.

In 1987, OPM issued regulations, effective in 1988, specifying procedures for how an individual should request a determination of eligibility for enhanced annuity service credit under section 8336(c) and setting deadlines for submitting such requests. See 5 C.F.R. § 831.901, et seq. (1988) (the "1988 version"). The revised regulations included a provision, entitled "[r]equests from individuals," requiring an individual to request, no later than September 30, 1989, a determination of whether any periods of past government service qualified for enhanced annuity service credit. 5 C.F.R. § 831.908(e) (1988). That provision also specified that "[a]fter September 30, 1989, coverage in a position or credit for service will not be granted for a period greater than one year prior to the date that the request from an individual is received by the employing agency, the agency where past service was performed, or OPM." Id. The current version of this provision is found at 5 C.F.R. § 831.906, and adds that requests from individuals must be "submitted" and "filed" according to certain procedures.

Lengerich began work at the Bureau, at its National Interagency-Fire Center ("Fire Center") in Idaho, on May 6, 1979. In late 1986 and early 1987, Lengerich, along with other Bureau employees, met with William J. Mitchell ("Mitchell"), a Technical Representative also employed by the Bureau at the Fire Center, to discuss whether their various past job duties at the Bureau qualified for firefighter enhanced annuity service credit. Mitchell's authority in such matters was limited to assisting employees in providing required information to Carmen Simonson ("Simonson"), the Personnel officer at the Fire Center responsible for Fire Center firefighter retirement cases. Simonson, in turn, was one of several retirement coordinators, all of whom reported to, and provided the retirement information to, Mary Haugland ("Haugland"), the person ultimately in charge of all Bureau firefighter enhanced annuity service credit cases. Employees were instructed to refer specific questions to Haugland.

Lengerich contends that the meetings with Mitchell took place on December 10, 1986 and in the spring of 1987. Mitchell cannot recall the dates of the meetings, although he does recall meeting with a group of Bureau employees on at least one occasion to discuss service credit toward an enhanced annuity. Mitchell asserts that, because he had no direct responsibility for the preparation of claims for enhanced annuity service credit, he had a general discussion with the group of Bureau employees. Mitchell recalled that the group was seeking information as to what they must do to determine whether they might be eligible for an enhanced annuity and that, at the instruction of his supervisors, he relayed to the group certain information regarding the unlikelihood that their service would qualify. Lengerich does not deny these facts, but characterizes the oral discussions as formal "requests" for enhanced annuity service

credit. On August 23, 1993, and May 17, 1996, more than six years after her oral discussions with Mitchell, Lengerich filed written requests (the "written requests") for enhanced annuity service credit, addressing them to Haugland's successor, Marcia Scifres.

On October 7, 2003, the Agency found that Lengerich's oral discussions were ineffective and did not meet the September 30, 1989 request deadline. The Agency thus did not credit service prior to Lengerich's oral requests and, apparently overlooking Lengerich's 1993 written request, determined that it would not consider service prior to one year before the 1996 written request; that is, prior to May 1995. Lengerich petitioned for review by the Board.

At the request of the parties, the administrative judge ("AJ") bifurcated the case and, in the proceeding at issue here, considered only the timeliness of Lengerich's oral discussions and written requests. After a hearing, the AJ credited both of Lengerich's written requests, concluding that she timely requested a determination with respect to service that preceded either of them by no more than one year. Initial Decision, slip op. at 12. However, the AJ, like the Agency, did not credit Lengerich's oral discussions, holding that requests for firefighter enhanced annuity service credit must be in writing and that Lengerich's oral discussions were, for that reason, not timely. Id. at 11. The Initial Decision became the final decision of the Board on October 5, 2004. Lengerich appeals the timeliness determination of her oral "requests" to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II. DISCUSSION

### A. Standard of Review

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); Cheeseman v. Office of Pers. Mgmt., 791 F.2d 138, 140 (Fed. Cir. 1986). The petitioner bears the burden of establishing error in the Board's decision. See Cheeseman, 791 F.2d at 140.

The interpretation of a regulation is a question of law which we review de novo. Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc). We construe a regulation in the same manner as we construe a statute, by ascertaining its plain meaning. Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414-15 (1945) (focusing on the "plain words of the regulation" to ascertain the meaning of the regulation); Lockheed Corp. v. Widnall, 113 F.3d 1225, 1227 (Fed. Cir. 1997) ("To interpret a regulation we must look at its plain language and consider the terms in accordance with their common meaning."). In interpreting a regulatory provision, we examine the text of the regulation as a whole, reconciling the section in question with sections related to it. See Reflectone, 60 F.3d at 1577-78 (holding that the proper interpretation of the plain language of the regulation "examines and reconciles the text of the entire regulation, not simply isolated sentences").

B. Analysis

Lengerich contends that the Board erred in concluding that her oral discussions were ineffective and, thus, not timely. Lengerich argues that, under Henry v. Department of Justice, 157 F.3d 863, 865 (Fed. Cir. 1998), there is a distinction between making a "request" and submitting written documents in support of a request. She contends that because her oral discussions with Mitchell took place prior to the September 30, 1989 deadline, they were timely with respect to all of her past service, regardless of when she followed up on those discussions by submitting documentary evidence. Lengerich also argues that the Board erred in finding her oral discussions untimely based on regulations that were promulgated in 1988, after she had the meetings with Mitchell. Lengerich urges us to find that her oral discussions were timely under the version of the regulations then in place because that version is silent as to a written/oral distinction, and she complied with the requirement that a request be made to the appropriate administrative authority when she addressed her oral requests to Mitchell.

The Agency argues that the various versions of the regulations, the Agency Memoranda, and the OPM publications support the requirement that a request must be written, and that the Board thus did not err in affirming the Agency's determination that requests must be written. The Agency also argues that, even if oral requests were contemplated by the regulations, Lengerich still did not comply with the regulations because she addressed her requests to Mitchell, who was not the "appropriate administrative authority."

05-3064                                    7

The Board affirmed the Agency's determination that "requests" must be in writing. In so holding, the Board first evaluated the regulatory procedures for processing and approving requests, which, at the time of Lengerich's oral discussions, required that the "appropriate administrative authority," with the concurrence of OPM, "shall" determine the applicability of the special retirement provisions. See 5 C.F.R. §§ 831.902, 831.905 (1986). The Board found that, in 1986, Mitchell was a go-between, or contact point for employees with questions; that all Bureau retirement cases went through Haugland; and that employees were directed to give claims to their personnel officer (in this case Simonson) who would in turn send it to Haugland. Initial Decision, slip op. at 6-7. Given the multiple people and offices involved, and in light of the regulatory requirement for joint determination by the employing agency and OPM, the Board found that Lengerich would have to make a request in a form that could be passed on for review by the agencies explicitly charged with determining the applicability of the regulations and concluded that a request must be in writing. Id., slip op. at 6. As support for its conclusion, the Board found that the forms and requirements set forth in the Agency Memoranda, which were published prior to Lengerich's oral discussions with Mitchell, reflected that a request for firefighter enhanced annuity service credit needed to be in writing. Id., slip op. at 9. As further support for its interpretation, the Board found that the 1988 version of 5 C.F.R. § 831.908, which set the deadline for making a "request," implicitly required that a request must be in written form because it states that a request "must be submitted to OPM through the current employing agency." Id., slip op. at 11-12. The Board concluded that use of the words "must be submitted" implies that "the pertinent regulations did not contemplate or condone an oral request." Id. slip op. at 12.

The Board also distinguished Henry on the ground that, in that case, there was a written request whereas here, there was not. Id., slip op. at 10. Having determined that a request must be in writing, the Board did not consider whether Mitchell was the "appropriate administrative authority."

Because the regulations in effect at the time of Lengerich's oral discussions did not expressly permit or prohibit oral requests, and because at that time the Agency had in place a policy, expressed in the Agency Memoranda, that requests be made in writing, we hold that the Board did not err in affirming the Agency's determination that Lengerich's oral discussions with Mitchell were not timely.

At the outset, we note that this is not a case like Henry. In Henry, we held that a "request" was timely despite the employee's dormancy in failing to follow up the request with details to support service credit. But in Henry, as contrasted with the present case, the request was written, not oral. See Henry, 157 F.3d at 865.

As described above, the versions of the OPM regulations in place at the time of Lengerich's oral requests were silent as to requests from individuals and therefore did not specify procedures to be used by employees seeking to make a "request" with respect to past service credit. Indeed, the regulations stated only that "the appropriate administrative authority," with the concurrence of OPM, shall determine the applicability of the special retirement provisions, thus leaving it up to the various agencies to establish procedures for making such determinations and seeking OPM's concurrence. See 5 C.F.R. §§ 831.902, 831.905 (1986). In this case, the Bureau published the Agency Memoranda, instructing employees how to seek a determination of whether they are eligible for enhanced annuity service credit.

One such Agency memorandum, published on July 25, 1980, states:

> In the past, there has been some confusion and uncertainty in regard to the subject of this memo. A part of this confusion has been related to the definition of covered positions. Another problem has been determining employee eligibility.
> Discussions have been held with the Office of Personnel Management, and we are now able to inform you of some of their guidelines in reviewing positions for coverage under the special retirement provisions.

1980 Agency Memorandum (emphasis added). One such guideline is that "[a]ll employees who may have creditable service toward firefighter retirement should complete Enclosure No. 1, Summary of Experience for Firefighter/Law Enforcement Officer Retirement." Id.

Another Agency memorandum states that "[b]efore any employee is separated from Bureau rolls under these special retirement provisions, BLM/OPM determinations on the creditability of the firefighter [] service must be received by the Bureau." 1983 Agency Memorandum (emphasis added). The 1983 Agency Memorandum also instructs that "[e]mployees who may be eligible under the special provisions are encouraged to obtain verification of service early in their careers . . . ." Id. In a section entitled "Verification of Service," the 1983 Agency Memorandum provides that requests must contain, "as a minimum," specific information regarding job experience and personnel actions. Id. The 1983 Agency Memorandum also states that "[e]mployees who submit requests for verification of service determinations should maintain a copy of all information submitted," and that requests "must be forwarded to the Denver Service Center (D-533) for further action prior to submission to OPM." Id. (emphases added). The 1983 Agency Memorandum cautions that it is "essential" that employees keep

05-3064                                    10

copies of their requests because OPM will not return copies forwarded to them and also because it is "hard to recall exact information submitted if questions arise in further review processes." Id.

The Supreme Court has advised that "[c]ogent 'administrative interpretations . . . not [the] products of formal rulemaking . . . warrant respect.'" Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 487 (2004) (citing Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 385 (2003)). Moreover, "an agency's construction of its own regulations is entitled to substantial deference." Lyng v. Payne, 476 U.S. 926, 939 (1986); Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 144, 150 (1991). To merit deference, however, an "agency's interpretation (1) must have been directed to regulatory language that is unclear; (2) must have been actually applied in the present agency action; and (3) must not be plainly erroneous or inconsistent with the regulation. In addition, we consider the consistency vel non with which the agency has applied that interpretation." Gose v. U.S. Postal Serv., 2006 U.S. App. LEXIS 14526 at 19 (Fed. Cir. June 14, 2006); see also Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 359 (1989) (agency interpretation found to be controlling where not "'plainly erroneous or inconsistent with the regulation'" (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945))); Auer v. Robbins, 519 U.S. 452, 462-63 (1997) (deferring to agency's interpretation of its own regulation).

Although the regulations at issue in this case were promulgated by OPM and the Agency Memoranda were promulgated by a different agency, the Bureau of Land Management, we need not address whether this causes us to withhold deference to the

interpretation reflected in the Agency Memoranda because the Agency Memoranda specify the manner in which both OPM, the agency charged by Congress with the function of "executing, administering, and enforcing" retirement activities, 5 U.S.C. § 1103(a)(5)(B), and the Bureau, the "appropriate administrative authority" charged with determining the applicability of the retirement regulations, 5 C.F.R. §§ 831.902, 831.905, elected to address the gap left in the regulations.. For example, the 1980 Agency Memorandum states that it is the result of "[d]iscussions [that] have been held with the Office of Personnel Management" and that it was distributed to employees "to inform [them] of some of [OPM's] guidelines." Collectively, the Agency Memoranda also reflect a consistent course of interpretation, dating back to 1980. "It is enough to observe that the well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" Bragdon v. Abbott, 524 U.S. 624, 642 (1998) (citing Skidmore v. Swift & Co., 323 U.S. 134-139-40 (1944) and resorting for guidance to a "consistent course of agency interpretation" by the agencies delegated with responsibility for administering the Rehabilitation Act). In filling the gap in the regulations, which do not explicitly state whether a "request" from an individual should be oral or written, these Agency Memoranda reveal the agencies' interpretation that a request must be in writing. Lengerich has not persuaded us that this interpretation is plainly erroneous or inconsistent with the regulations, which are silent as to this issue. See Robertson, 490 U.S. at 359.

The Agency's requirement for a written request reasonably recognizes the fact that retirement benefits are sufficiently important financial considerations as to warrant

that they be in writing to avoid confusion or inconsistency. <u>Rodriguez v. West</u>, 189 F.3d 1351 (Fed. Cir. 1999), is informative. In that case, in August of 1979, after the death of her husband, Rodriguez filed an application for a surviving spouse's pension with the Veteran's Department regional office. Her claim was denied because she was receiving Social Security benefits that exceeded the permissible maximum under the pension provisions. <u>Id.</u> at 1352. In 1986, Rodriguez received a notice from the Social Security Administration, stating that her Social Security benefits would terminate in February 1987, making her eligible for the pension as of that date. <u>Id.</u> Some time after that date, she visited the Veteran's Department regional office, showed them the letter, and orally requested a surviving spouse's pension, but was told she was not entitled to it. <u>Id.</u> In March 1990, Rodriguez filed a written request for a pension with the Veteran's Department and was awarded a pension effective only April 1, 1990, but not effective February 1987. <u>Id.</u> Rodriguez brought suit, alleging that the effective date of her benefits should have been February 1987. This court held that the oral request for benefits was insufficient and that the claim for benefits, required to be filed with the Department of Veterans Affairs, must be in writing. In so holding, we stated that:

> A large number of claims are filed with the Department, and without written evidence of them, it would be extremely difficult, if not impossible, to determine exactly when an informal claim was filed and what benefits were sought . . . . To permit an oral statement to constitute the filing of an informal claim would create serious problems in the operation of the veterans benefits programs. It would often be impossible for the Department's personnel who handle and process these claims to recollect many of the oral applications made, let alone the details of those claims.

<u>Id.</u> at 1354.

Disabled American Veterans v. United States, 650 F.2d 1178 (Ct. Cl. 1981), is also instructive. In that case, the Court of Claims was faced with the issue of whether a refund claim for a certain tax deduction sought by the Disabled American Veterans organization was properly submitted to the Internal Revenue Service (the "I.R.S."). The trial judge found that the claim was properly submitted. In so holding, the trial judge charged the I.R.S. with express knowledge of the refund claim based upon informal oral discussions during an audit of the tax returns of the Disabled American Veterans organization. Id. at 1179. The Disabled American Veterans organization subsequently filed a written claim (which was denied), but that claim did not encompass the claim for the deduction at issue. Id. Thus, for there to have been an acceptable claim for refund of the deduction at issue, the oral representations at the audit would have to constitute a valid "claim." Our predecessor court disagreed with the trial judge, holding that the claim must be written due to practical concerns, stating:

> It is common knowledge that the personnel in governmental departments is constantly changing. Many times several different employees work on a single case. Some of them have before them only such information as is contained in the files. For this reason, and because of the shortness of the memory of man, and for many other reasons, only a written claim is sufficient to meet the requirements of the statute and the need it intended to fill.

Id. at 1180.

Although Lengerich characterizes her oral discussions with Mitchell as formal "requests," the record in this case equally supports the Agency's determination that they were informal inquiries and discussions of a general nature amongst a group of co-workers regarding the special retirement provisions. The record highlights the parties' divergent recollections and characterizations of events that happened long ago, bringing

05-3064                                                    14

to bear not only the practical concerns noted above, but also the difficulty in drawing the line between general conversations, informal inquiries, and formal "requests." Applying our limited scope of review and the respect owed the Agency in the circumstances of this case, and for all of the reasons noted above, we hold that the Board did not err in affirming the Agency's determination that Lengerich's oral discussions were ineffective as requests for enhanced firefighter annuity service credit and, therefore, were untimely.

In light of our affirmance of the Board's decision finding the Agency's determination that Lengerich's oral requests were not timely because they were not in writing, we do not address whether Mitchell was an "appropriate administrative authority."

## III.  CONCLUSION

For all of the foregoing reasons, the Board's decision is affirmed.

<u>AFFIRMED</u>

# United States Court of Appeals for the Federal Circuit

05-3064

MADONNA A. LENGERICH,

Petitioner,

v.

DEPARTMENT OF THE INTERIOR,

Respondent.

MAYER, <u>Circuit Judge</u>, dissenting.

Because the Merit Systems Protection Board misinterpreted 5 C.F.R. § 831.908(e) (1988) and conflated "request" with "application," I dissent.

Section 831.908(e) states that "[r]equests [for enhanced retirement benefits] received . . . not later than September 30, 1989, may include any periods of previous service." The board interpreted this regulation as requiring requests be in the form of a formal writing. Lengerich asserts that such requests may be made orally, but agrees with the board that enhanced retirement benefit applications must be in writing.

Despite the fact that the request in <u>Henry v. Dept. of Justice</u>, 157 F.3d 863 (Fed. Cir. 1998), was written, not oral, <u>Henry</u> makes it clear that a "request" and an "application" are two different things, and that it is the timing of the request that is relevant in determining whether a claim is timely. <u>Henry</u> further states that section 831.908(e) specifies neither the form nor the content of a proper request. Given that the regulation requires nothing more than a "request" before September 30, 1989, and

that a request and an application are distinct, an oral request is sufficient to satisfy the regulation. Because the board incorrectly interpreted 5 C.F.R. § 831.908(e), and because it conflated "request" with "application," the record is not sufficiently developed to determine whether Lengerich's discussions with Mitchell were requests for, or merely discussions about, her enhanced retirement eligibility. Therefore, I would vacate the board's decision and remand.