DAVIS, Judge,
with whom BARTLEY, Judge, joins, dissenting:
While we agree with the very thorough and well-reasoned dissent of our colleague, the Chief Judge, in his analysis of 38 C.F.R. § 3.321(b), we write separately to emphasize that our dissent is grounded in the conviction that the language of § 3.321(b) unambiguously refutes the interpretation advanced by the Secretary. By employing the plural of the noun “disability,” the plain and unambiguous meaning of this regulation allows certain VA officials, in “exceptional cases” when the rating schedule is otherwise inadequate, to assess the impairment in earning capacity due to the collective effect of multiple service-connected disabilities. The regulation indicates that in the extraschedular assessment, it is necessary to consider the aggregate effect of service-connected disabilities — the “disability picture.” The regulation’s use of “disability picture” is critical because multiple disabilities may collectively affect earning capacity when each disability considered individually may not.
The clear directive of the unambiguous regulatory language must be given effect. Lengerich v. Dep’t of Interior, 454 F.3d 1367, 1370 (Fed.Cir.2006) (citing Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414-15, 65 S.Ct. 1215, 89 L.Ed. 1700, (1945) (focusing on the “plain words of the regulation” to ascertain the meaning of the regulation)); Trilles v. West, 13 Vet.App. 314, 321 (2000) (where language conveys a plain meaning the Court must give effect to that meaning); see also Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) (interpretation guided by ordinary common meaning of words); *266 Tesoro Haw. Corp. v. United States, 405 F.3d 1389, 1346 (Fed.Cir.2005) (construing a regulation like a statute by “ascertaining its plain meaning”). Moreover, the Secretary’s interpretation of his own regulation is not entitled to deference when, as in this case, it conflicts with the plain meaning and words of the regulation. See Christensen v. Harris Cnty., 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (granting deference to agency interpretation plainly contradicted by unambiguous regulatory language would be “to permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation”); Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 476, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992) (affording no deference to agency interpretation when in conflict with unambiguous text); Smith v. Brown, 35 F.3d 1516, 1523 (Fed.Cir.1994) (applying the rules of statutory interpretation to regulations); DeLuca v. Brown, 8 Vet.App. 202, 207 (1995) (holding that VA interpretation of regulation conflicting with plain meaning not entitled to deference).
Not only is the regulatory language unambiguous, we fault the majority’s assertion that the Secretary’s “disability-by-disability interpretation of § 3.321(b)” is more “consistent with the statutory and regulatory scheme,” ante at 244. See Smith v. United States, 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (language cannot be interpreted apart from context). The foundation principle for evaluating disabilities is to compensate for the average effect of service-connected disabilities on the ability to earn a living. See 38 C.F.R. § 4.1 (2012). The rating schedule addresses individual disabilities, and through a combined rating table it provides for combining multiple disability evaluations. 38 C.F.R. § 4.25 (2012) (combining disability ratings). Significantly, the evaluation process in addition requires that VA collectively evaluate service-connected disabilities to determine whether together they result in the inability to earn a living wage. 38 C.F.R. §§ 4.16 (2012) (providing total disability ratings based on unemployability (TDIU)). In 2005, approximately 220,000 veterans were receiving TDIU benefits, the award of which required collective evaluation. GAO, VA Should Improve Its MaNagement of Individual Unemployability Benefits by STRENGTHENING CRITERIA, GUIDANCE, AND PROCEDURES 2, 41 (GAO-06-309, 2006). This number illustrates that the VA disability evaluation process frequently requires that it evaluate multiple disabilities collectively in a manner clearly beyond the application of fixed disability percentages for individual disabilities and tables for combining those percentages. Evaluating the cumulative effect of several service-connected disabilities together is therefore in no way outside the ability of VA raters and a “disability-by-disability interpretation of § 3.321(b)” is no more “consistent with the statutory and regulatory scheme,” ante at 244, than the cumulative approach that is also extant in VA rating procedures via TDIU consideration.
The history of the regulation further clarifies that VA revised its regulation “to accord justice” in the “exceptional case” that presents an “exceptional or unusual disability picture,” and allow certain VA officials to approve an extraschedular evaluation for “a disability or disabilities.” 38 C.F.R. § 3.321(b)(1) (2012); General Rating Considerations, Exceptional Cases, 26 Fed.Reg. 1561, 1583 (Feb. 24, 1961) (codifying VA Regulation 1321 and adding language that an extraschedular rating could be awarded based on the service-connected “disability or disabilities”) (subsequently codified at 38 C.F.R. § 3.321(b)).
In sum, the unambiguous language of the regulation provides that when the rat *267 ing schedule is inadequate to evaluate a single service-connected disability or multiple service-connected disabilities, certain VA officials are authorized to approve an extraschedular evaluation that considers the veteran’s complete disability picture. Such an evaluation may involve assessing the exceptional or unusual impact of each service-connected disability individually, but, according to the regulation, it may also involve considering the collective interaction of multiple service-connected disabilities. We therefore respectfully dissent from the majority’s affirmance of the Secretary’s restrictive interpretation, which is contrary to the clear and unambiguous regulatory language.