NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DANIEL E. CAMERON,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-5010

---

Appeal from the United States Court of Federal Claims in No. 10-CV-0696, Judge Nancy B. Firestone.

---

Decided: November 18, 2013

---

CHESTER H. MORGAN, II, Morgan Legal Offices P.C., of Colorado Springs, Colorado, argued for plaintiff-appellant.

MELISSA M. DEVINE, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and STEVEN J. GILLINGHAM, Assistant Director. Of counsel was DOUGLAS K. MICKLE, Trial Attorney.

---

Before RADER, *Chief Judge,* LOURIE, and O'MALLEY,
*Circuit Judges.*

RADER, *Chief Judge.*

The Court of Federal Claims found that Col. Daniel
Cameron, a retired officer of the Oregon National Guard,
was not improperly denied consideration by a retention
board before he was discharged from active duty. Because
the army regulations in effect at the time entitled Col.
Cameron to review by a retention board, this court re-
verses and remands.

## I.

Col. Cameron enlisted in the Army in 1981, accepted a
commission as a U.S. Army Reserve Corps officer in 1983,
and entered the Active Guard Reserve (AGR) under Title
32 for the Oregon National Guard in 1998. In 2003, he
received orders under 10 U.S.C. § 12301(d) for a "one time
occasional tour" in Colorado. J.A. 180–81. The orders
listed his "active duty commitment" as October 1, 2003
through February 28, 2006. J.A. 180–81. His orders
further indicated that he was "continued on active duty
with [the soldier's] consent and the consent of the Gover-
nor of the State of OREGON" and "[t]his order constitutes
active duty; the soldier is transferring from Title 32 AGR,
to Title 10 AGR." J.A. 180–81.

On May 31, 2005, Col. Cameron requested a tour ex-
tension through August 31, 2007; this request was en-
dorsed by three of his superiors. J.A. 154, 168, 191–98.
Then, one month before the end of that tour, Col. Camer-
on reached twenty years of active service and was, there-
fore, subject to automatic retirement. Because the
requests for tour extension were unsuccessful, Col. Cam-
eron retired as a colonel on March 1, 2006 after 20 years,
one month and one day of service. J.A. 39.

Prior to 2003, AGR officers who wished to continue serving beyond twenty years of active federal service were considered for retention on a case-by-case basis. Then, in a memo dated February 11, 2003, the Assistant Secretary of the Army (Manpower and Reserve Affairs) directed the Chiefs of the National Guard Bureau (NGB) and the Army Reserve to transition to a retention board process when considering retention of AGR officers beyond 20 years. J.A. 57–58. According to the Assistant Secretary's memorandum, the annual continuation boards "would provide for consistent application, fairness, and equity" in the retention process. J.A. 57–58. The February 2003 memorandum directed the states and territories to conduct Active Federal Service Tour Continuation Boards (AFSTCBs) "to consider eligible Title 32 AGR officers" for extension beyond 20 years of service. J.A. 73. It also directed the NGB to conduct an AFSTCB "for Title 10 AGR officers." J.A. 73. Officers under both Title 32 and Title 10 received review if they fell "within the zone of consideration." The zone of consideration included officers who achieved 19 or more years of service between July 2004 and September 2005. J.A. 73.

The Department of the Army amended Army Regulation (AR) 135–18 to implement the retention board process described in the Assistant Secretary's February 2003 memo. A.R. 135–18 ¶ 4–7 (2003). The new regulation went into effect on December 10, 2003 and both parties rely on the 2003 version. *Id.*

Section 4–7 of the AR 135–18 addresses extensions of active duty (AD) or full-time National Guard Duty (FTNGD) beyond 20 years of active service (AS). It provides that AGR officers "will be released from AD (serving under 10 U.S.C.) or FTNGD (serving under 32 U.S.C.) when they have attained 20 years of AS . . . unless approved for extension, under the policy prescribed in paragraph b." *Id.* Paragraph b provides that "AGR commissioned officers . . . may be retained on AD beyond

20 years of AS through a board process, convened at least annually." *Id.* Under paragraph b(1), "[c]onsideration of eligible officers for retention is *automatic*, as such; officers need not apply for retention consideration." *Id.* (emphasis added). Paragraph b(3)(a) assigns responsibility for managing the retention board process to the Deputy Chief of Staff. *Id.*

In response to the change, the Federal NGB issued a memo dated October 9, 2003 announcing that it would convene its continuation board on January 12, 2004. Similarly, on December 3, 2003, the Oregon Reserve Army National Guard (ORARNG) announced that it would conduct its Title 32 AGR continuation board on January 26, 2004. Prior to January 2004, Col. Cameron learned that some of his contemporaries had received a memorandum advising them that they would be considered by AFSTCBs. Although Col. Cameron fell within the zone of eligibility, he was not notified about either retention board.

Similarly, a memorandum was circulated before the 2005 continuation boards were convened. Col. Miracle of the NGB, the then-Chief of the Personnel Policy and Readiness division, issued a memorandum on October 13, 2004 concerning the "FY 2005 [ARNG] Title 10/32 AGR Officer [AFSTCBs]." J.A. 50–54. The October 2004 memo set forth a board process as required by the regulation that addressed both Title 10 and Title 32 officers. *Id.* AFSTCBs were to consider Title 10 and Title 32 AGR officers who were within the "zone of consideration," *i.e.*, officers attaining 19 or more years of active service between October 1, 2005 and September 30, 2006. J.A. 51. The October 2004 memo instructed that "T32 officers will be boarded by their states/territories," and "the National Guard Bureau (NGB-ARZ-T) . . . will board T10 AGR officers." J.A. 51. The memorandum went on to define "Eligible Officers" and "Non-Eligible Officers," but neither of those categories specifically referenced Title 32 officers

serving one-time occasional tours. *Id.* The parties agree that Col. Cameron was within the "zone of consideration" and neither party argues that he fit into any of the categories of "Non-Eligible Officers" listed in the memorandum. He was not, however, considered by any AFSTCB.

Beginning in December 2003 and continuing through 2005, Col. Cameron initiated various contacts with both the NGB and the ORARNG requesting to be considered for continuation. *See* J.A. 167–68 (advisory opinion from the Personnel Division of the NGB summarizing Col. Cameron's attempts to be included in the deliberations of either the Title 10 retention board or the Title 32 retention board). He was told orally that he would not be considered by the NGB board because he was "T-10 status, but not in the T-10 program." *Id.* He was also not considered by the Title 32 board because the ORARNG believed he was serving under Title 10, and that the state board lacked authority to consider officers serving in a federal capacity. *Id.* Despite the support of several of his superiors in his efforts to continue in active service, he was not considered for retention. *See* J.A. 168 (summarizing requests by Col. Cameron's superiors that he remain on active duty).

Because Col. Cameron was not considered for retention by any board, he made three separate appeals to the Army Board for Correction of Military Records (ABCMR) requesting reappointment and back pay. *Cameron v. United States*, 106 Fed. Cl. 551, 556–57 (Fed. Cl. 2012). Considering his appeal of June 2006, the ABCMR relied on an advisory opinion from the Personnel Division of the NGB and concluded that Col. Cameron was not eligible for consideration by the Title 10 retention board because "he was on a one-time tour." J.A. 156. The advisory opinion and the ABCMR decision relied on the fact that Col. Cameron's August 2003 orders were clear that his duty assignment was to end on February 28, 2006. *Id.* Thus, the advisory opinion and ABCMR decision conclud-

ed that Col. Cameron was not in the "Title 10 program," despite the fact that (i) the orders also stated that Col. Cameron was "transferring from Title 32 AGR to Title 10 AGR," (ii) the orders were authorized by "10 U.S.C. 12301(d)," and (iii) the orders constituted a "permanent change of station." J.A. 180–81. Neither the advisory opinion nor the ABCMR decision, however, cited to a specific regulation or policy document addressing Col. Cameron's situation, *i.e.*, an officer transferred from Title 32 to Title 10 is not part of the Title 10 program.

Noting that the ABCMR's decision did not cite to specific authority for the conclusion that officers on one-time tours were not eligible for consideration by the NGB continuation board, Col. Cameron requested reconsideration. The Board denied the request and made its decision final. In doing so, however, the Board articulated different reasons in support of its conclusion that Col. Cameron was ineligible. *Id.* This time, the ABCMR stated that Col. Cameron was not "in the zone of consideration for the continuation board." J.A. 139.

Believing the ABCMR's "zone of consideration" reasoning to be factually incorrect, Col. Cameron sent a letter to the ABCMR pointing out the error. J.A. 126–27. The ABCMR responded by letter, informing him that even though the wording of the denial letter was "imprecise," the conclusions "mirrored" the previous determination. J.A. 123–24. The letter then informed Col. Cameron that he had exhausted his administrative remedies. *Id.*

In March of 2010, Col. Cameron filed suit in the United States District Court for the District of Colorado. *Cameron*, 106 Fed. Cl. at 557. The district court, however, transferred the case to the United States Court of Federal Claims. *Id.* The Court of Federal Claims then remanded to the ABCMR. J.A. 115.

On remand, the ABCMR requested a second advisory opinion from the NGB. *Cameron*, 106 Fed. Cl. at 557.

The second NGB advisory opinion reiterated the belief that Col. Cameron was not eligible for inclusion in the Title 10 board process because he was on a "one-time, occasional tour" and was not part of the "career Title 10 program." J.A. 61. According to the NGB, if Oregon wanted Col. Cameron to return to "Title 32 AGR status at the end of his tour, the state must include him in their board." *Id*. The advisory opinion also explained that a limited number of positions were available at Col. Cameron's level and that the Oregon board did not extend any similarly situated officers during the relevant year. *Id*. Thus, the opinion concluded that, even though Col. Cameron was never considered by a retention board, he was "treated in the same manner as similarly situated officers." *Id*.

The ABCMR also requested an advisory opinion from the ORARNG. *Cameron*, 106 Fed. Cl. at 558. Whereas the NGB opinion concluded that Col. Cameron could only have been reviewed by a Title 32 board, the ORARNG opinion concluded that Col. Cameron could *not* be reviewed by a Title 32 continuation board because "[s]tates were not authorized to review Title 10 officers per NGB guidance." J.A. 99. Thus, the ORARNG concluded that only a Title 10 continuation board could have reviewed Col. Cameron.

Relying on the second NGB advisory opinion, the ABCMR concluded that Col. Cameron was not eligible for consideration by the Title 10 continuation board. And, because Col. Cameron's state did not continue any Title 32 officers at his level, his only choices were to retire or join the inactive reserves. J.A. 43. Thus, the ABCMR concluded that Col. Cameron's "decision to retire was voluntary given his choices" and that "the evidence presented [did] not demonstrate the existence of a probable error or injustice." J.A. 43–44.

After the ABCMR maintained its position on remand, the government filed motions in the Court of Federal Claims arguing that the court lacked subject matter jurisdiction and that Col. Cameron had failed to state a justiciable claim. *Cameron*, 106 Fed. Cl. at 553. In the alternative, the government sought judgment on the administrative record. *Id.* Col. Cameron also sought judgment on the administrative record. *Id.*

The Court of Federal Claims judge held a telephone hearing on the outstanding motions. NGB's counsel, Maximo Gonzalez, participated in the hearing even though he was not an attorney of record in the case. During the hearing, the judge asked Mr. Gonzalez various questions about the relevant regulations and NGB procedures. J.A. 573–91. After several exchanges between the court and Mr. Gonzalez, Col. Cameron's counsel objected that Mr. Gonzalez was giving improper testimony. J.A. 573–91. The court explained that Mr. Gonzalez was only there to assist the court in understanding the regulations, and that the court would not rely on Mr. Gonzalez's testimony absent verification in the regulations themselves. J.A. 589.

After the hearing, the judge denied the government's motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim. *Cameron*, 106 Fed. Cl. at 553. The judge then found for the government on the cross motions for judgment on the administrative record. *Id.*

Col. Cameron appeals to this court, alleging that the Court of Federal Claims erred in affirming the ABCMR's decision that Col. Cameron had not been wrongfully discharged, and that the Court of Federal Claims erred in allowing Mr. Gonzalez to "testify" at the hearing.

## II.

This court has jurisdiction over final decisions of the United States Court of Federal Claims under 28 U.S.C. § 1295(a)(3). Final decisions granting or denying a motion for judgment on the administrative record are reviewed without deference. *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005). This court, therefore, reapplies the statutory review standard applied by the lower court. *Id.* With respect to the review of a decision by a military correction board, this court will overturn a decision only if it is "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Lewis v. United States*, 458 F.3d 1372, 1376 (Fed. Cir. 2006).

Interpretation of a regulation is a question of law that this court reviews without deference. *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc). Regulations receive the same review as statutes. *Lengerich v. Dep't of Interior*, 454 F.3d 1367, 1370 (Fed. Cir. 2006) (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414–15 (1945)). The court first reviews the language of the words in the regulation to ascertain its meaning. *Lockheed Corp. v. Widnall*, 113 F.3d 1225, 1227 (Fed. Cir. 1997). In doing so, this court considers the regulation as a whole, and does not focus solely on isolated sentences or provisions. *Beecham v. United States*, 511 U.S. 368, 372 (1994).

Where a term in a regulation is ambiguous, the Supreme Court has accorded deference to the agency's interpretation of its own regulation. *See, e.g.*, *Auer v. Robbins*, 519 U.S. 452, 457 (1997); *U.S. v. Larionoff*, 431 U.S. 864, 872 (1977) ("In construing administrative regulations, 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" (*quoting Bowles*, 325 U.S. at 414)). The level of deference is particularly high in the case of military

regulations and military personnel decisions.  *Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir. 1988) ("Judicial deference must be 'at its apogee' in matters pertaining to the military and national defense.").

The Supreme Court, however, has recently clarified that judicial deference to an agency's interpretation is not without limits.  *See, e.g., Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012).  Deference will not be accorded to an agency's construction where it is plainly erroneous or inconsistent with the regulation itself.  *Id.*  Similarly, deference is "unwarranted" when the "agency's interpretation conflicts with a prior interpretation."  *Id.*  And deference is not appropriate where the agency's interpretation "is nothing more than a convenient litigating position . . . or a post hoc rationalization advanced by an agency seeking to defend past agency action . . . ."  *Id.* (internal quotation marks and citations omitted).

## III.

The core issue in this case is whether the Army acted contrary to the language of AR 135–18 when Col. Cameron was retired without consideration by a retention board. Col. Cameron argues that the regulation mandates that he should have received automatic consideration by a retention board. The government argues that the word "eligible" in the regulation is ambiguous.  Thus, the government argues that this court should defer to the NGB's interpretation of "eligible" and its conclusion that Col. Cameron was not "eligible" for review by a Title 10 retention board because he was on one-time orders when he reached the twenty-year mark. In affirming the ABCMR's decision that Col. Cameron was not wrongfully discharged, the Court of Federal Claims agreed with the government that "eligible," as used in AR 135–18, ¶ 4–7, is ambiguous because an express definition is not provided. *Cameron*, 106 Fed. Cl. at 562.

This court disagrees that "eligible" is ambiguous. AR 135–18, ¶ 4–7 (2003) expressly provides:

> 4–7. Extension on active duty or FTNGD beyond 20 years [Active Service (AS)]
>
> a. AGR officers, to include warrant officers and commissioned warrant officers, will be released from [Active Duty (AD)] (*serving under 10 USC*) or [Full Time National Guard Duty (FTNGD)] (*serving under 32 USC*) when they have attained 20 years of AS . . . unless approved for extension, under the policy prescribed in paragraph b.
>
> b. AGR commissioned officers . . . may be retained on AD beyond 20 years of AS through a board process, convened at least annually.
>
> (1) *Consideration of eligible officers for retention is automatic*, as such; officers need not apply for retention consideration.
>
> (2) Time in grade requirements, for retirement purposes, will be in accordance with the provisions of section 1370, Title 10 USC.
>
> (3) [Deputy Chief of Staff (DCS)], G-1 (DAPE-MPO)–
>
> a. Will manage the retention board process by adhering to Department of Army board procedures.
>
> b. Is responsible for writing the memoranda of instruction, recessing boards, and processing the results to C, NGB, the CAR, or the ASA (A & RA) as appropriate.

AR 135–18, ¶ 4–7 (2003) (emphases added).

By its language, paragraph 4–7(a) applies to both AGR officers serving under Title 10 and AGR officers serving under Title 32. It therefore must have applied to Col. Cameron, regardless of whether he was serving in federal, *i.e.,* Title 10, or state, *i.e.,* Title 32, status. Paragraph 4–7b(1), then provides that consideration for such officers will be "automatic." The regulation makes no mention of "Title 10 program," "Title 32 program," "Title 10 status," "Title 32 status," or any requirement other than being an AGR officer who has "attained 20 years of AS." A plain reading of the regulation, therefore, dictates that the word "eligible" can only have been intended to require that the officer in question be an AGR officer who has served for the required period of time. This interpretation is also consistent with the February 2003 memorandum from the Assistant Secretary of the Army that sought to "provide for consistent application, fairness and equity" in the retention process, and end the "case-by-case … piecemeal approach" in place prior to 2003. J.A. 57. Therefore, this court finds no ambiguity in the term "eligible" in the regulation.

The parties agree that based on the unambiguous definition of "eligible," Col. Cameron was an eligible officer under the language of the regulation. *See* Appellant's Br. 26. The regulation unambiguously and expressly entitled him to automatic review by a retention board. Thus, because the military must follow its own regulations, the Army erred in failing to ensure that Col. Cameron received what AR 135–18 promised. *See Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993) ("[Even w]hen the military is given unlimited discretion by Congress, it is nevertheless bound to follow its own procedural regulations if it chooses to implement some."); *Voge*, 844 at 779 (noting the long-established principle that agencies must follow their own regulations).

Even if the regulation was ambiguous, the deference traditionally given to an agency's interpretation would not

be warranted here. First, deference may not be warranted when an interpretation is "nothing more than a convenient litigating position . . . or a post hoc rationalization advanced by an agency seeking to defend past agency action . . . ." *See Christopher*, 132 S. Ct. at 2166–67 (internal quotation marks omitted). Here, the two NGB advisory opinions—explaining the distinction between "Title 10 status" and "Title 10 program"—were drafted *after* Col. Cameron had been discharged and subsequently filed for reinstatement. *See* J.A. at 62 (NGB opinion stating that "[t]here was no specific written regulation" addressing Col. Cameron's situation). And the pre-litigation documents that *are* in the record have no references to distinguishing between "program" and "status." J.A. 50 (February, 11, 2003 memorandum from the Secretary of the Army), 57 (October 13, 2004 memorandum from the NGB's Col. Miracle, Chief of the Personnel Policy and Readiness division). The government's proposed interpretation, therefore, appears to be an after-the-fact rationalization prompted by Col. Cameron's efforts to seek relief rather than a consistent policy addressing one-time tour officers.

Not only were the government's interpretations post-hoc rationales, but each newly posited rationale differed from the earlier-provided rationales. *See Christopher*, 132 S. Ct. at 2159. First, the ABCMR explained that Col. Cameron was not eligible for consideration because he was on a one-time tour. J.A. 156 (March 2007 ABCMR decision based on an NGB advisory opinion). Then, the ABCMR explained that he was not within the "zone of consideration." J.A. 139 (April 2008 ABCMR decision). Next, his "ineligibility" was based on NGB policy. J.A. 123 (September 2009 letter from the ABCMR Director). Finally, Col. Cameron was told that the decision to not consider officers serving one-time tours was "consistent with regulation, policy, and practice" of the NGB. J.A. 62 (September 2011 NGB advisory opinion). The inconsist-

encies and series of different rationales provide a further reason why the interpretation of AR 135–18 advanced by the government in this appeal does not merit the traditional level of deference.

In its most recent explanation, the government concedes that Col. Cameron was eligible for automatic consideration by a retention board. Appellee's Br. 26. Yet, neither governmental entity—the ORARNG nor the NGB—considered Col. Cameron when they convened their respective continuation boards. As a result, Col. Cameron was discharged without the automatic review required by the regulation. The NGB directed the organization of both the state and federal boards, and thus, the NGB was responsible for ensuring that Col. Cameron was reviewed by a continuation board. This court does not dictate *which* board, *i.e.,* Title 10 versus Title 32, was required to conduct the automatic review of Col. Cameron. Nor does this court conclude that Col. Cameron would have been retained, or should have been retained, had he been considered by either board. Such personnel decisions are for the military. This court simply holds that, in Col. Cameron's case, the military erred when it did not follow its own unambiguous regulation and provide the automatic consideration required by its own regulation.

The Court of Federal Claims noted, in passing, that it lacked jurisdiction to resolve this matter if the fault sits with the State of Oregon instead of the NGB. *Cameron,* 106 Fed. Cl. at n.9. The regulation, however, does not assign the authority to the State of Oregon. Paragraph 4–7b(3) assigns responsibility for the retention board process to the Deputy Chief of Staff. AR 135–18 (2003). Therefore, to the extent the various memorandums and policy presentations issued under the authority of the Deputy Chief of Staff failed to account for soldiers in Col. Cameron's situation, the fault lies not with the recipients of those documents, but with the authority that issued them. Therefore, neither this court nor the Court of

Federal Claims need consider whether the State of Oregon properly interpreted the regulation in question. The responsibility to ensure that all 20-year AGR officers received an automatic review rested with the DCS, not the state.

## IV.

For the reasons set forth above, this court reverses the finding of the Court of Federal Claims that Col. Cameron was not wrongfully discharged, and remands for further proceedings consistent with this opinion. The remaining arguments have been carefully considered and found unpersuasive.

**REVERSED AND REMANDED**

Costs

Costs to Appellant.